

-N0 cv-30

**Gregory Langadinos J.D., M.P.A.**
**1801 Town and Country Drive**
**P.O. Box # 6050**
**Norco, CA 92860**
**glangadinos@yahoo.com**
**(949) 844-0250**



fee
**PAID**

FILED
CLERK, U.S. DISTRICT COURT

MAY 2 4 2023

CENTRAL DISTRICT OF CALIFORNIA
BY  DVE  DEPUTY

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**GREGORY LANGADINOS**
                **Plaintiff,**

**V.**

**LIFE TIME INC., (also known as Lifetime Group Holdings Inc. d/b/a/ Life Time Athletic LAGUNA NIGUEL, CA and CHRISTOPHER RYAN, in is official capacity) as Senior Associate General Counsel Life time Inc., and in his individual capacity**

              **Defendants,**

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Case Number** 5:23-cv-00940-SVW-(MRW)

**Judge assigned** _____

**Courtroom Number** _____

**JURY TRIAL REQUESTED**

### I.   COMPLAINT AND JURY DEMAND

#### A. Introduction

1. Plaintiff, Gregory Langadinos acting as his own counsel at this time, by and through his own behalf, moves this honorable court for judgment against the Defendants, LIFE TIME INC.,(also known as Life Time Athletic) on the grounds, and in the amount as set forth herein.

2. This lawsuits is premised on employment discrimination, wrongful termination, retaliation, sexual harassment, reverse discrimination, and ethnicity discrimination and Gender in violation Title VII of the 1964 Civil Rights Act; 42 U.S.C, violation of California State statutes governing wages, and wage theft under California law; as well as

1

numerous torts suffered by plaintiff including sexual assault and battery while employed for defendant LIFE TIME INC., (also known as Lifetime) Group Holdings Inc. d/b/a/ Life Time Athletic) JURY TRIAL REQUESTEDLAGUNA NIGUEL, CA (hereinafter "Life time").

3. Former employee of defendant Lifetime employed as personal trainer; plausibly alleged, an employment relationship before EEOC, and pursuant to 29 U.S.C. § 626(e) which provides a 90–day window for filing a lawsuit after receipt of the right-to-sue letter from the EEOC; plaintiff now timely files this lawsuit; invoking both federal questions, and diversity jurisdiction, as well as supplemental jurisdiction pleading State law statues, torts, and breach of contract actions.

4. A civil action may be brought under 29 U.S.C. § 626(e) by a person defined in section 630(a) of this title against the respondent named in the charge within 90 days after the date of the receipt of such notice.

5. The plaintiff Gregory Langadinos properly exhausted administrative remedies before the EEOC, and received a "right to sue letter" dated February 27, 2023, (**attached herein as Exhibit "1"**); Plaintiff timely files this instant lawsuit on May 24 2023, within the 90 day statutes of limitations, in accordance with 29 U.S.C. § 626(e) provides a 90–day window.

## II. <u>JURISDICTION</u>

6. The court has jurisdiction over all causes of action set forth here based upon <u>28 U.S.C.A. § 1331</u>, Title VII of the Civil Rights Act of 1964, as amended, <u>42 U.S.C.A. §§ 2000e et seq.</u> ("Title VII"), and pursuant to the supplemental jurisdiction of this court, over all nonfederal causes of action under <u>28 U.S.C.A. § 1367</u>

7.    This Court also has Diversity Jurisdiction, as the plaintiff is from California, while the defendant is incorporated in Minnesota, and the amount in controversy exceeds $ 75,000 *and there is complete diversity between parties, as plaintiff is presently domiciled in California, while defendant* Life time is incorporated in the Chanhassen, Minnesota.

8. This honorable court has diversity jurisdiction over the plaintiff and defendant who resides in Riverside County within this state of California.    This Court furthermore has jurisdiction over defendant corporation Life time who although incorporated and headquartered in Chanhassen, Minnesota, has numerous gym locations physically located within the state of California such as Laguna Niguel, California the location where plaintiff was defrauded of wages, and assaulted and suffered a battery and because Lifetime officials committed sufficient and specific acts in this state, namely, sexual harassment and discrimination, causing tortious injury, and for violations of public policy within this state.

9. Plaintiff has exhausted all administrative remedies. All conditions precedent to the filing of this action have occurred or have been waived, or their performance is otherwise excused. Plaintiff has received a "right to sue letter" from the Equal Employment Opportunity Commission, a copy of which is attached herein as Exhibit 1 and incorporated by reference.

### III.   VENUE

10.    Venue is proper in this judicial district and this Ronald Reagan United States Courthouse, located at 411 West 4th Street, Room 1053 Santa Ana, CA 92701-4516 pursuant to 28 U.S.C.A. § 1391(b)(2) because all of the events giving rise to the claims pleaded herein this Complaint occurred in Laguna Niguel, California which is located within

the southern division judicial district of California and pursuant to 28 U.S.C.A. § 1391(b)(1). The corporate defendants, and individual both reside in the State of Minnesota, however, the division and location in Laguna Niguel, California is managed and operated by both defendants. Venue is also proper as the cause of action arose in the City and or Town of Laguna Niguel, California Orange County California, where this U.S. District Court is physically located.

## IV.    PARTIES TO THIS ACTION

11. Plaintiff, Gregory Langadinos is an individual residing in the City of Norco, Riverside County in the State of California.

12. Defendant, LIFE TIME INC. DBA LIFETIME ATHELTIC is incorporated, and its headquarters are physically located at 2902 Corporate Place, Chanhassen, MN 55317. Defendant Lifetime is an corporation incorporated in Carver County, Minnesota], and at all times relevant to this lawsuit mentioned herein plaintiff Gregory Langadinos was employed by defendant LIFETIME as a personal trainer from September 2021 through February 27, 2022, and a gym member from March 1, 2021, through February 27, 2022.

13. Defendant Christopher Ryan is at all times to this action employed as Senior Associate General Counsel for defendant LIFE TIME (also known as Life time Athletic) DBA LIFETIME FITNESS #0237 25600 RANCHO NIGUEL RD ORANGE, LAGUNA NIGUEL, CA

## V.    FACTS OF THE CASE

14. Paragraphs 1 through 13 are incorporated by reference.

15. Plaintiff, Gregory Langadinos's allegations are directly against LIFE TIME as well as defendant Christopher Ryan, who was complicit in the cover-up of the sexual assault suffered

by plaintiff, and who misused his position as a licensed attorney to deliberately sweep the sexual assault suffered by plaintiff and the offer of employment under the rug.

The defendant have engaged in an abusive scheme to carry out internal policies aimed at treating Males who are heterosexual, and White like second and third class citizens by calling the Sheriff on male sexual predators and arresting males who merely use video to record Asian female gym member who was using family changing room—while plaintiff who suffered violent sexual battery is neglected, and never protected by defendant Life time are provided with any Grievance procedures, although male plaintiff was victim of much more serious sexual assault by being violently grabbed within defendant Life Time gym facility. **See Exhibits "1" through "8" annexed herein.**

16. On or about, September 6, 2021, plaintiff, suffered from a violent sexual assault, followed by discrimination basis on sex and was sexually harassed by Barry Stevens while employed by Lifetime after Stevens and defendant Ryan fabricated false accusations that plaintiff used profanities, when plaintiff was the victim of a sexual assault and battery, unpaid wages, and wrongful termination, and fraud.

17. **On or about September 6, 2021, *[date of assault], [plaintiff Gregory Langadinos]* was subjected to sexual assault and battery and eventually sexual harassment by Barry Stevens *[name of defendant 1]*, which included:**

(a) **Grabbing *[name of plaintiff]*'s testicles and penis forcibly without *[his/her]* consent;**

(b) **Defendant Barry Stevens in his official capacity as General Manager offered plaintiff a full time work position as a personal trainer in exchange for silence from**

**plaintiff, so plaintiff will not contact Orange County Sheriff's Department, and other Police officials;**

18. Plaintiff Langadinos was wrongfully terminated for reporting illegal gambling and other crimes committed by General Manager Barry Stevens and high-level officials that oversee Stevens, and retaliated against plaintiff after plaintiff was being asked to refer gym members to purchased and begin consuming expired Supplements manufactured and sold by defendant Lifetime.  See Exhibit "3" herein from U.S. Department of Labor a separate administrative actions pending in San Francisco, CA against the defendants.

19. Plaintiff Langadinos filed an administrative charge with the EEOC, and a Notice of Right to Sue was issued on [date of notice]. A copy of the Notice of Right to Sue is attached as Exhibit [designation as exhibit] and is incorporated by reference.

20. The plaintiff was originally a gym member of LIFE TIME beginning on approximately March 1, 2021, until September 1, 2021, when he was offered employment by defendant Lifetime's General Manager Barry Stevens.

21. On September 6, 2021, the plaintiff was using the men's bathroom on the second floor, and because of a medical condition known as neurogenic bladder disorder, plaintiff used the handicapped stall, (because he is an otherwise qualified individual with disabilities); and was using a catheter, plaintiff was standing up an urinating.

22. Suddenly, a male named Juan, who was a gym member, jumped over the door staring at Langadinos, and making grotesque and vulgar sexual lewd and lascivious sexual statement, including; ("you have a ___ _ock").

23. Plaintiff, enraged and in total shock, screamed at sexual predator..

24. Plaintiff opened the door, and Juan grabbed plaintiff's private sexual parts in the presence of other bathroom patrons.

25. Plaintiff ordered Juan to "stop" as he ran out of the door.

26. Later in the day, plaintiff approached Barry Stevens and reported the sexual assault he suffered and requested that the Police or Sheriff be called to press charges for sexual assault and battery, unlawful touching without consent.

27. Barry Stevens in his capacity as the General Manager, and in violation of the CODE OF BUSINESS CONDUCT contract between plaintiff and defendant Lifetime; (requiring Lifetime officials to "follow the law at all times" stated the following to the plaintiff;

28. "Greg, just a few months ago a woman and her child were using the very first Family Changing room, as you enter the family bathrooms and showers from the indoor pool.

29. Plaintiff responded, "what the hell do I care about this story right now, I was sexually assaulted. "Defendant Stevens stated, "if another sexual assault is reported, I could be fired as it happened under my watch."

30. Langadinos, again reiterated," are you going to call the Police or the Sheriff or give me past history of other victims of sexual assault."

31. Defendant Stevens then asked the plaintiff to come back to see him tomorrow, about a resolution.

32. The plaintiff returned to Steven's desk and could not find him and was told he was outside at the pool.

33. Plaintiff then approached Stevens at the dry sauna, and Stevens spoke to plaintiff, offering plaintiff a full-time position as a personal trainer, at $ 25.00 an hour which plaintiff accepted.

**34.** Plaintiff signed his name within a page of the Employee Handbook; which Ms. Maurer provided plaintiff signed her name and provided email on one of the signatory pages, and plaintiff countersigned his name.   See **Exhibit "6" herein.**

35. Plaintiff began training gym members, as a result of the employment agreement, and promise of employment made to him by defendant Barry Stevens.

## A. DEFENDANT LIFETIME REFUNDED PLAINTIFF SIX MONTHS OF GYM MEMBERSHIP CHARGES, ACKNOWLEGING PLAINTIFF BECAME EMPLOYEE ENTITLED TO FREE GYM MEMBERSHIP

36. Plaintiff contact Human Resources and obtained a refund for the remaining six month term, in the amounts of $ 208, $ 208, $ 208, $ 208, $ 208, and $ 216, because as full time employee as of September 16, 2021, his gym membership is now free of charge.

37.  Plaintiff worked 30 to 40 hours a week, at the rate of $ 25.00, including overtime.

38. Defendant Stevens never reported the offer of employment to Human Resources, and in violation of California employee wage laws, defendant Stevens, never kept proper records of plaintiff's employment, and the Human Resources personnel which are all located over 1,800 miles away in Chanhassen, Minnesota were never told of the promise of employment, which defendant's counsel now uses the criminal theft of wages, and unjust enrichment of defendant Lifetime, as if there was never an employment agreement as if defendant's counsel was present, and an eye witness to the discussions between plaintiff and defendant Stevens.  See Letter from  California Department of Industrial Relations dated October 20, 2022, and attached herein as **Exhibit "2."**

39. Only plaintiff, defendant Stevens, and witness Daniel Murillo were present during employment negotiations.

40. There exist in this controversy multiple genuine issue for trial and sufficient evidence favoring the plaintiff and future moving party for summary judgment for a jury to return a verdict in plaintiff's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

41. Defendant, Barry Stevens, who said, "this is my gym" made an offer of employment to hire plaintiff, (in the presence of a third-party); didn't report this promise of employment to Human Resources in Chanhassen, Minnesota, on a quid pro quo basis, so plaintiff wont report crime of sexual assault and battery, and now the defendant Lifetime has brought in their attorneys to engaged in this criminal conspiracy and cover-up, to try to sweep it all under the rug and cover up with what turned out to be a fake job offer.

### B. PLAINTIFF WAS LURED TO ACCEPT EMPLOYMENT OFFER OF EMPLOYMENT   MADE BY ONLY BY STEVENS, THEN HAD HIS READY AND AWAITING COVERT 69-YEAR-OLD FEMALE EMPLOYEE Babette McClagen, who has surpassed retirement age, call plaintiff and parachute herself into plaintiff' employment and life affairs, reading a prepared script of false allegation that plaintiff was a gym member and McLagan has no personal knowledge about what occurred in California Gym when she is physically located in Chanhassen, Minnesota.

42. Ms. McLagan who is 69 years old, and lacks personal knowledge, and never met plaintiff and has no personal knowledge of anything involving plaintiff's offer of employment, or anything else that occurred in Laguna Niguel, CA, because she was called plaintiff from Chanhassen, MN 1800 miles away and fabricated false allegations she was told to convey to plaintiff acting as a cats paw for the criminal behaving defendant LIFE TIME.

### C. PLAINTIFF SUFFERED PERSONAL INJURY AT WORK, FROM SWALLOWING DIRT PARTICLES CAUSED BY NEGLIGENT CONTRACTOR CAUSING PLAINTIFF TO SEEK MEDICAL CARE—WHICH DEFENDANT LIFETIME ADMITTED FAULT

43.  On top of the variety of false statements, fraudulent inducement to employ plaintiff, by defendant Barry Stevens, (Intentional Misrepresentation or Fraud (C.C. §, 1710), and Steven's Concealment of facts (C.C. § 1709(3)), Stevens engaged in a calculated pattern of concealment of facts (C.C. § 1709(3)), by making an offer of employment to plaintiff, but never disclosing plaintiff's employment to Human Resources located in Chanhassen, Minnesota, plaintiff suffered personal injury by swallowing dirt particles from shower, caused by third-party contractor selected by defendant Lifetime.

**D. DEFENFANT CHRISTOPHER RYAN LIFE TIME's own Senior Associate General Counsel Life Time Inc., gloated and praised the negligent General Manager employed for Lifetime Laguna Niguel for engaging in a criminal coverup of the sexual assault and battery suffered by plaintiff, and failing to pay plaintiff wages for six month of work; by stating "Barry Stevens can do whatever he wants" "its his gym."**

44. In crystal clear violation of the Minnesota Rules of Professional Responsibility and his ethical duties to the Minnesota Bar to act ethical at all times 24 hours a day, defendant Christopher Ryan, on or about February 30, 2022, without ever setting foot into the Southern California location of where plaintiff was employed, physically assaulted, ripped off and cheated out of his wages, defendant Ryan engaged in a criminal cover up of the violation of plaintiff's employee rights, and even defamed the plaintiff, and fabricated facts, that plaintiff called gym members insulting words, which Defendant Ryan has no personal knowledge as he is physically located 1800 miles away in Chanhassen, Minnesota.

45.  Defendant Ryan in furtherance of his criminal threats to fabricate false facts about the plaintiff, threatened over the telephone the following threats which could and should result in termination of his license to practice law before the Courts of

Minnesota, (which Ryan doesn't actually do, as he is employed merely as an administrative assistant who answers phone calls and writes letters for Lifetime Inc.

    A. Defendant Ryan threatened that, "we can have a female employee allege you harassed her."

    B. "We can say you never worked for Lifetime; one day;

    C. "I don't have to produce video of your working because it is destroyed after 30 days."

    D. "We can say you didn't get along with known gay members of the gym[1]."

46.   On top of the fact that defendant Ryan acted and continues to act like a extortionist engaged in criminal threats to fabricate and conjure up false facts to disparage plaintiff, unless plaintiff dropped his claims for unpaid wages, discrimination, and suffering a sexual battery.

## VI. CLAIMS FOR RELIEF

**FIRST COUNT**
**Sexual Harassment; Reverse Discrimination; Discrimination on basis of Heterosexual Male physically assaulted in violation of Title VII of Civil Rights Act of 1964; 42 U.S.C.A. §§ 2000e et seq.; against all defendants; Lifetime and Attorney Christopher Ryan**

47. Plaintiff restates and realleges the above paragraphs 1 through 46 with the same force and affect.

---

[1] The plaintiff plans to file and serve RULE 35 Request for Mental and Physical Examinations to be conducted up defendant Christopher Ryan, as well as the General Manager, Barry which are needed for the plaintiff to get to the truth of who is off base, and not possessing accurate thinking.

48.    By *the above described* conduct, actions and inactions in failing to ever take action;

wrongfully carried out by the defendant Lifetime Corporation officials, the defendants applied

different and lower standards to protect the White Male Heterosexual male who was physically

assaulted and battered than they applied to an Asian female who (approximately three (3)

months before plaintiff was sexually assaulted); was using first Family bathroom to the very

right corner[2], with her daughter when a male placed a cellular telephone attempting to record

either the Asian female or her daughter; s female genitalia thereby engaging in reverse

discrimination, fraud, and sexual harassment of plaintiff  because of their skewed and

discriminatory policies that never protected or advocated for the rights of employee

Langadinos.

*[*engaged in sexual harassment toward *[name of plaintiff]* in violation of Title VII.

49. **As a result of *[name of defendant 1]*'s conduct toward *[name of plaintiff]*, and the loss**

**of *[his/her]* job, *[name of plaintiff]* has suffered damages, including, inter alia, loss of**

**salary and benefits, other monetary losses and emotional distress.**

50. **WHEREFORE, *[name of plaintiff]* requests the court to enter judgment against the**

**Defendants, and each of them, for violating Title VII, and award *[him/her]* back pay,**

---

[2] The nephew of the owner of the Lifetime facility walked plaintiff through the exact steps
of the facts involving an Asian female gym member—non employee—who was using the
first Family bathroom in the right hand corner as you walk in from the indoor pool, and
described in great detail how a male gym member placed his cell phone under the door,
while videotaping the Asian female and her daughter of about 5 year of age while they
were both using the restroom.  The male culprit was arrested on the spot, after Barry
Stevens called the Police right away to advocate for minority Female Asian victim of this
behavior.  However, when plaintiff is physically and sexually assaulted and has his
genitals violently grabbed, Barry Stevens, offers the plaintiff employment, and then fire
plaintiff never arresting or prosecuting Juan then identified culprit who sexually assaulted
the plaintiff using a much more severe form of sexual battery and assault, which Juan
admitted he engaged within.

front pay and lost benefits, compensatory damages, punitive damages, attorney's fees
and costs, and such other and further relief as this court deems just, equitable and
proper.

**SECOND COUNT**
**Discrimination Based on Race, Ethnicity, or National Origin Under the Civil Rights
Act; 42 U.S.C.A. §§ 2000e et seq; against all defendants; Lifetime and Attorney
Christopher Ryan**

51. Plaintiff repeats and incorporates by reference the allegations set forth in the preceding

    paragraphs as though fully set forth here.

52. The Civil Rights Act prohibits employers from discriminating against employees based on

    their race, ethnicity, and/or national origin.

53. Defendants discriminated against Plaintiff when they first accused *[him/her]* of participating

    in a misconduct towards unidentified and unknown gym members, and then

    terminated *[his/her]* employment based on *[his/her]* race, ethnicity, or national origin, race,

    gender, and heterosexual straight male status.

54. In doing so, Defendants acted maliciously and with reckless indifference to Plaintiff's right

    to be free from discrimination based on race, national origin, and/or ethnicity and race, gender,

    and heterosexual straight male status.

55. **As a result of Defendants' discriminatory conduct, Plaintiff is entitled to damages, in**
    **an amount to be determined at trial, including but not limited to past and future lost**
    **wages, and compensation for *[his/her]* past and future physical and emotional**
    **distress.**

**THIRD COUNT**
**Wrongful Termination; Retaliation, Sexual Harassment; Reverse Discrimination; 42
U.S.C.A. §§ 2000e et seq., against all defendants; Lifetime and Attorney Christopher
Ryan**

56. Plaintiff repeats and incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth here.

57. The *[name of state]* Human Rights Act (*[citation of statute]*) prohibits employers from discriminating against employees based on their race, ethnicity, and/or national origin.

58. Defendants discriminated against Plaintiff when they first accused *[him/her]* of participating in a fraudulent scheme because *[he/she]* is of Asian descent and then terminated *[his/her]* employment based on *[his/her]* race, ethnicity, or national origin.

59. In doing so, Defendants acted maliciously and with reckless indifference to Plaintiff's right to be free from discrimination based on race, national origin, and/or ethnicity.

60. As a result of Defendants' discriminatory conduct, Plaintiff is entitled to damages, in an amount to be determined at trial, including but not limited to past and future lost wages, and compensation for *[his/her]* past and future physical and emotional distress.

## FOURTH COUNT
**Intentional Infliction of Emotional Distress/Negligent Infliction of Emotional Distress; against defendant Life Time and Christopher Ryan;**

61. Plaintiff repeats and incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth here.

62. Defendants' conduct of accusing Plaintiff of a crime due to *[his/her]* race, ethnicity, and/or national origin, reporting *[him/her]* to law enforcement, and ultimately terminating *[his/her]* employment based on the false and discriminatory allegations inflicted emotional distress on Plaintiff.

63. Defendants acted intentionally and maliciously without any regard for Plaintiff's employment, career, reputation, or physical and mental health and safety.

64. Due to Defendants' false and discriminatory accusations, Plaintiff lost *[his/her]* employment,
faced unfounded criminal charges, and was forced to spend over 24 hours in
jail. *[His/Her]* spotless criminal record was ruined, and the disclosure of the incident, however
unfounded and inaccurate, on current job applications and during interviews has made it very
difficult for *[him/her]* to find substantially similar employment. As a result of these traumatic
life events, Plaintiff suffered severe physical and emotional distress, and
underwent *[specification of mental and physical treatments]*.

**65. As a result of Defendants' conduct, Plaintiff is entitled to damages in an amount to be
determined at trial.**

**<u>FIFTH COUNT</u>**
**Assault and Battery; Sexual Assault; (*Negligence; Respondeat Superior Vicarious
Liability by all defendants);**

66. Plaintiff repeats and incorporates by reference the allegations set forth in the preceding
paragraphs as though fully set forth here.

67. The defendant Life Time and defendant Ryan through their discriminatory and egregious
discriminatory policies governing the Laguna Niguel, California Life Time Health Club location
engaged in actions and inactions that caused the Male White plaintiff to be victimized and
suffer a vicious assault and battery *by being* repeatedly offensively touched *[*against his will]*.

68.   Had plaintiff been a female, minority status individual, the Sheriff and Police would have
been immediately called, however, because plaintiff is a Male, over 50 years old, and
heterosexual, Life Time Athletic permitted the sexual battery upon the plaintiff, and defendant
and licensed Minnesota, Attorney Christopher Ryan even engaged in virtue signaling and
false outrage, and falsely accused plaintiff of using the words, "faggots" when speaking to

other gym member, (which plaintiff never used or said) and defendant Ryan located 1800
miles away in Minnesota, has no clue what happened[3].

69. By not having policies in place to protect Male Victims of Sexual assaults both defendants
permitted and allowed the sexual culprit to be able to have committed assault and battery
against plaintiff Langadinos

70. *Defendant Life Time, and* defendant Ryan through his discriminatory and egregious acts
and malfeasance of duty to his employer at the time of the assault and battery, are directly
liable and acted complicit in the cover-up of the sexual assault suffered by plaintiff, and are
furthermore   liable under the theory of respondeat superior for *the* assault and battery of
suffered by plaintiff.

## SIXTH COUNT
## NEGLIGENCE/NEGLIGENT HIRING OF NEGLIGENT CONTRACTOR—CULLIGAN
## PERSONAL INJURY SUFFERED BY PLAINITFF

71. Plaintiff repeats and incorporates by reference the allegations set forth in the preceding
paragraphs as though fully set forth here.

72. Defendants Life time hired a contractor named Culligan to replace shower, and install metallic
pipes, and numerous parts to replace older equipment.  The defendant Life Time negligently
selected, hired, and contracted with the negligent employees that caused the plaintiff to be

---

[3] So oblivious and disconnected to the real world is defendant licensed Minnesota
Christopher Ryan he told the plaintiff, in front of another witness on the telephone, after
plaintiff reported the sexual assault and cover-up by General Manager Barry Stevens,
who offered employment to plaintiff as a cover-up for the sexual assault suffered by
plaintiff, and theft of his wages for 6 months, the following; "BARRY CAN DO WHATEVER
HE WANTS, ITS HIS GYM."  This above the law arrogance is the reason a lawsuit was
required to be filed so plaintiff can have the truth come out about the Draconian and
criminal actions of defendants Life Time and Attorney Christopher Ryan.

hospitalized of two separate occasions on October 30, 2021, and November 1, 2021, suffering

urinary tract infection, and nauseousness, requiring plaintiff to take antibiotics.

73. Defendants acted intentionally and maliciously without any regard for Plaintiff's employment,

career, reputation, or physical and mental health and safety.

74. Defendants failed to ever provide plaintiff with workman's compensation and instead

fabricated false and discriminatory accusations, against plaintiff causing plaintiff to be caused

to have lost *[his]]* employment, faced unfounded and conjured up misconduct charges, and

was forced to be treated on two occasions at HOAG medical Center. As a result of these

traumatic life events, Plaintiff suffered severe physical and emotional distress, and

underwent *[specification of mental and physical treatments]*.

75. As a result of Defendants' conduct, Plaintiff is entitled to damages in an amount to be

determined at trial.

**SEVENTH COUNT-**
**Failure to Pay Minimum Wages**
**[Cal Labor Code §§ 1194, 1197; IWC Wage Order No. 1-2001, § 4]**
**(Against DEFENDANT)**

76.   PLAINTIFF incorporates herein by specific reference, as though fully set forth, the allegations in the

preceding paragraphs.

77.   Pursuant to California Labor Code §§ 1194, 1197, and IWC Wage Order No. 12001, § 4,

payment to an employee of less than the applicable minimum wage for all hours worked in a payroll period is

unlawful.

78.   All of the named defendants failed to pay plaintiff minimum wages for all hours worked by, among

other things: requiring, permitting or suffering plaintiff to work off the clock; requiring, permitting or

suffering plaintiff to work through meal and rest breaks; illegally and inaccurately recording time in

which plaintiff worked; failing to properly maintain plaintiff's' records; failing to provide accurate

itemized wage statements to plaintiff for each pay period; and other methods to be discovered.

79.   DEFENDANT's conduct described herein violates California Labor Code §§ 1194, 1197, and IWC

Wage Order No. 1-2001, § 4.  As a proximate result of the aforementioned violations, plaintiff has been

damaged in an amount according to proof at trial.  Therefore, pursuant to California Labor Code §§ 200,

203, 226, 558, 1194, 1197.1, and other applicable provisions under the Labor Code and IWC Wage Orders,

plaintiff is entitled to recover the unpaid balance of wages owed to them by defendants plus interest,

penalties, attorneys' fees, expenses, and costs of suit.

**EIGHTH CAUSE OF ACTION**
**Failure to Pay All Wages Due to Discharged and Quitting Employees**
**[Cal. Labor Code §§ 201, 202, 203]**
**(Against all DEFENDANTs)**


80.    Plaintiff incorporates herein by specific reference, as though fully set forth, the allegations in the

Preceding paragraphs.

81.    Pursuant to California Labor Code § 201, 202, and 203, Defendant is required to pay all earned and

unpaid wages to an employee who is discharged.  California Labor Code § 201 mandates that if an employer

discharges an employee, the employee's wages accrued and unpaid at the time of discharge are due and

payable immediately.

82.  Furthermore, pursuant to California Labor Code § 202, defendants were required to pay all accrued

wages due to an employee no later than 72 hours after the employee quits his or her employment, unless the

employee provided 72 hours previous notice of his or her intention to quit, in which case the employee is

entitled to his or wages at the time of quitting ore wrongful termination.

83.    California Labor Code § 203 provides that if an employer willfully fails to pay, in accordance with

California Labor Code §§ 201 and 202, any wages of an employee who is discharged or who quits,

the employer is liable for waiting time penalties in the form of continued compensation to the employee

at the same rate for up to 30 workdays.

84.    All of named defendants willfully failed to pay accrued wages and other compensation to plaintiff in accordance

with California Labor Code §§ 201 and 202.

85. As a result, plaintiff is entitled to all available statutory penalties, including the waiting time penalties

provided in California Labor Code § 203, together with interest thereon, as well as other available remedies.

86.    As a proximate result of defendant's unlawful actions and omissions, plaintiff was deprived of

compensation in an amount according to proof at the time of trial, but in excess of the jurisdiction of this

Court, and are entitled to recovery of such amounts, plus interest thereon, and attorneys' fees and

costs, pursuant to California Labor

Code §§ 1194 and 2699.

**NINTH CAUSE OF ACTION**
**Failure to Timely Pay All Wages Earned**
**[Cal. Labor Code § 204]**
**(Against all DEFENDANTS)**

87.    PLAINTIFF incorporates herein by specific reference, as though fully set forth, the allegations in the

preceding paragraphs.

88.  Pursuant to California Labor Code § 204, DEFENDANT is required to pay employees at least

twice a month for all wages earned during the preceding pay period. California Labor Code § 204

mandates that labor performed between the 1st and 15th days, inclusive, of any calendar month shall be

paid for between the 16th and the 26th day of the month during which the labor was performed, and labor

performed between the 16th and the last day, inclusive, of any calendar month, shall be paid for between

the 1st and 10th day of the following month.

89.  Furthermore, pursuant to California Labor Code § 204, if DEFENDANT utilizes an alternate payday

schedule, DEFENDANT is required to pay wages within seven calendar days of the end of the payroll

period in which the wages were earned.

90.  All of the named defendants have willfully failed to timely pay accrued wages and other

compensation to plaintiff in accordance with California Labor Code § 204.

91.  As a result, plaintiff is entitled to all available statutory penalties, together with interest thereon, as well

as other available remedies.

92.   As a proximate result defendants' unlawful actions and omissions, plaintiff has been deprived of

compensation in an amount according to proof at the time of trial, but in excess of the jurisdiction of this

Court, and are entitled to recovery of such amounts, plus interest thereon, and attorneys' fees and

costs, pursuant to California Labor Code §§ 1194 and 2699.

**TENTH CAUSE OF ACTION**
**Failure to Maintain Required Records**
**[Cal. Labor Code §§ 226; IWC Wage Order No. 1-2001, § 7]**
**(Against all DEFENDANTS)**

93.  PLAINTIFF incorporates herein by specific reference, as though fully set forth, the allegations

 in the preceding paragraphs.

94.   Defendants used their illegal payroll policies and practices to deprive plaintiff of all wages earned

and due, an defendants knowingly and intentionally failed to maintain records as required under

California Labor Code §§ 226, 1174, and IWC Wage Order No. 1-2001, § 7, including but not limited to

the following records: total daily hours worked by each employee; applicable rates of pay; all deductions;

meal periods; time records showing when each employee begins and ends each work period; and

accurate itemized statements.

95.   As a proximate result of DEFENDANT's unlawful actions and omissions, Plaintiff have been damaged in

amount according to proof at trial, and are entitled to all wages earned and due, plus interest thereon.

Additionally, plaintiff is entitled to all available statutory penalties, including but not limited to civil penalties.

pursuant to California Labor Code §§ 226(e), 226.3, and 1174.5, and an award of costs, expenses, and

reasonable attorneys' fees, including but not limited to those provided in California Labor Code § 226(e), as

well as other available remedies.

## ELEVENTH CAUSE OF ACTION
**Failure to Furnish Accurate Itemized Wage Statements**
**[Cal. Labor Code §§ 226, 1174; IWC Wage Order No. 1-2001, § 7]**
**(Against all DEFENDANTS)**

96.   PLAINTIFF incorporates herein by specific reference, as though fully set forth, the allegations in

the preceding paragraphs.

97.   Defendant continuously and routinely failed to provide plaintiff with timely, accurate, and itemized

wage statements in writing showing each employee's gross wages earned, total hours worked, all

deductions made, net wages earned, the name and address of the legal entity or entities employing

plaintiff, and all applicable hourly rates in effect during each pay period and the corresponding number

of hours worked at each hourly rate, in violation of California Labor Code § 226 and IWC Wage

Order No. 1-2001, § 7.

98.   Defendants knowingly and intentionally failed to provide plaintiff with timely, accurate, and itemized

wage statements in accordance with California Labor Code § 226(a).

**TWELFTH CAUSE OF ACTION**
**RETALIATION IN VIOLATION OF LABOR CODE Labor Code §98.6 (FOR PLAINTIFF**
**PROTESTING AND ENGAGING IN PROTECTIVE ACTIVITY PURSUANT TO Labor Code § 1102.5(a)**

99.   PLAINTIFF incorporates herein by specific reference, as though fully set forth, the allegations in the

preceding paragraphs.

Labor Code §98.6 provides: "No person shall discharge an employee or in any manner discriminate against

any employee or applicant for employment because the employee or applicant engaged in conduct

delineated in this chapter.... Including the conduct described in... Chapter 5 (commencing with

Section 1101)[4] ..."

100. Labor Code § 1102.5(a) provides: "An employer may not make, adopt, or enforce any rule

regulation, or policy preventing an employee from disclosing information to a government or law

enforcement agency, where the employee has reasonable cause to believe that the information.

discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal

---

[4] After plaintiff reported the sexual assault he suffered, illegal gambling by General Manager
Bary Stevens,, and after plaintiff filed a CODE OF CONDUCT COMPLAINT, on March 1, 2022,
deceitful and extortionist defendant Christopher Ryan fabricated a story, that plaintiff called a
gym member a "faggot, in a written letter, without Ryan ever meeting plaintiff, holding hearings
or having personal knowledge of anything he claims. These actions warrant reporting defendant
Ryan to the Minnesota Bar's disciplinary investigative board for discipline. See plaintiff's March
1, 2022 CODE OF CONDUCT COMPLAINT, (**annexed herein as Exhibit "7"**); predating
Ryan's March 13, 2022 letter (**annexed as Exhibit "8";** terminating plaintiff's employment under
the guise of terminating his gm membership, and fabricating false and defamatory allegations
that plaintiff used the term "faggot" only after plaintiff reported who is really engaging in covering
up when males such as plaintiff are being subjected to homosexual harassment. It was plaintiff
that was sexually assaulted by homosexual behavior which defendant LIFE TIME does NOT
CONDONE!  The fabricated and fake outrage claims by Attorney Ryan are his way of not
condoning sexual assaults against plaintiff and other heterosexual males victimized by
defendant encouraging sexual assaults of men.  See 2 sworn Affidavits of witness Daniel Murillo.

statute. " Labor Code § 1102.5(b) provides: "An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable. cause to believe that the information discloses a violate on of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation."

101. Labor Code § 1102.5(c) prohibits an employer from retaliating against an employee for refusing to participate in an activity that would result in a violation of a state or federal statute, or a violation or noncompliance with a state or federal rule or regulation. 98. Labor Code § 1104 provides that, "In all prosecutions under this chapter, the employer is responsible for the acts of his managers, officers, agents, and employees."

102. As a proximate result of the conduct of Defendants, and each of them, Plaintiff has suffered general and special damages in a sum according to proof, but which amount exceeds the jurisdictional minimum of this Court, with interest thereon at the maximum legal rate.

103. As a result of the previously mentioned acts of Defendants, Plaintiff claims general damages for mental and emotional distress and aggravation in an amount to be proven at the time of trial.

104. As a proximate result of Defendants' wrongful conduct, Plaintiff has sustained, and continues to sustain economic damages in earnings and other employment benefits in an amount according to proof.

105.  As a proximate result of Defendants' wrongful conduct, Plaintiff has sustained, and continues to sustain non-economic damages and emotional distress, including but not limited to, loss of sleep, anxiety, tension, depression and humiliation.

106.  The acts and conduct of Defendants constituted "malice," "oppression," and/or "fraud" (as those terms are defined in Civil Code § 3294(c)), in that it was intended by Defendants, and each of them, to cause injury to Plaintiff or was despicable conduct which was carried on by the Defendants, and each of them, with a willful and conscious disregard of the rights of Plaintiff as a White Male of Grecian

decent, and a native of the borrows of Boston, Massachusetts.

107.   The acts of Defendants, and each of them, were done fraudulently, maliciously, and

oppressively and with the advance knowledge, conscious disregard, authorization, ratification or

act of oppression, within the meaning of Civil Code § 3294 on the part of Defendants' officers,

directors, or managing agents of the corporation. The actions and conduct of Defendants, and each of

them, were intended to cause injury to Plaintiff and constituted deceit and concealment of

material facts known to Defendants, and each of them, with the intention on the part of defendants

to deprive Plaintiff of property and legal rights, justifying an award of exemplary and punitive

damages in an amount according to proof.

### THIRTEENTH CAUSE OF ACTION
**FAILURE TO PREVENT DISCRIMINATION, HARASSMENT AND RETALIATION SUFFERED
BY PLAINITFF IN VIOLATION OF California Government Code § 12940 (Against
Defendants LIFE TIME, and Defendant Ryan)**

108   PLAINTIFF incorporates herein by specific reference, as though fully set forth, the allegations in

the preceding paragraphs.

109   In violation of California Government Code § 12940, Defendants, and each of them, failed to take

all reasonable steps necessary to prevent the sexually harassing conduct and discriminatory conduct

of plaintiff Langadinos.

110   At all relevant time periods, Defendants or their supervisors and agents failed to make an

adequate response and investigation into the conduct of sexual predator or schedule hearings

requested by plaintiff and thereby established a policy, custom, or practice, which condoned,

encouraged, tolerated, sanctioned, ratified, approved of, and/or acquiesced in sexual harassment

defendants LIFE TIME and Ryan towards plaintiff.

111.   At all relevant time periods, Defendants established a policy, custom, or practice, which condoned,

encouraged, tolerated, sanctioned, ratified, approved of, and/or acquiesced in sexual harassment.

112. At all relevant times herein, there existed a pattern and practice of conduct by Defendants which resulted in sexual harassment towards plaintiff male employee.

113. Defendants, and each of them, knew or reasonably should have known that the failure to respond to complaints from their employees and take corrective action to investigate and prevent such conduct would result in further sexual harassment against female employees including, but not limited to Plaintiff.

114. The failure of Defendants and their supervisors and agents to take immediate and appropriate action to stop the sexual harassment, to take all reasonable steps to prevent harassment from occurring, to provide any or adequate education, training, and information to their supervisors and staff concerning sexual harassment prevention policies and practices constituted deliberate indifference to the rights of employees, including but not limited to those of Plaintiff, under California Government Code § 12940 et seq.

115. By reason of the conduct of Defendants and each of them as alleged herein, Plaintiff necessarily retained attorneys to prosecute the within action. Plaintiff therefore is entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing the within action.

116. As a direct and proximate result of the previously mentioned acts of Defendants, Plaintiff suffered actual, consequential and incidental financial losses, including without limitation, loss of salary and benefits, all in an amount subject to proof at the time of trial. Plaintiff claims such amount as damages together with prejudgment interest pursuant to Civil Code § 3287 and any other provision of law providing for prejudgment interest.

117. As a proximate result of DEFENDANT's unlawful actions and omissions, plaintiff has been damaged in an amount according to proof at trial, and seek all wages earned and due, plus interest thereon. Additionally, plaintiff is entitled to all available statutory penalties, including but not limited to civil penalties

pursuant to California Labor Code §§ 226(e), 226.3, and 1174.5, and an award of costs, expenses, and

reasonable attorneys' fees, including but not limited to those provided in California Labor Code § 226(e),

as well as other available remedies.

ADDITIONALLY, the plaintiff demands judgments against defendants in the following additional manner;

A. For compensatory damages, including lost wages and benefits, and emotional distress

B. damages, in excess of $ and according to proof;

B. For interest on the amount of $ from *[date accrued compensation due plaintiff]*;

C. For penalty in the amount of $ pursuant to Lab. Code § 203;

D. For reasonable attorney's fees pursuant to Lab. Code § 218.5;

E. For costs of suit pursuant to Lab. Code § 218.5; and

F. For punitive damages;

G. For prejudgment interest on all amounts claimed; and

H. Finding that the acts and practices complained of are in violation of the Federal Civil Rights Act, Title VII, and California Wage Claim Act; and the

I. Finding that the acts and practices complained of constitute intentional infliction of emotional distress.

J. Awarding Plaintiff damages caused by Defendants' acts described above, including but not limited to compensatory and punitive damages, costs, and attorney's fees.

K. Awarding Plaintiff interest, including prejudgment and post-judgment interest, on the above-mentioned sums.

L. Awarding such other and further relief as the court deems equitable, just, and proper.

WHEREFORE, plaintiff demands judgment against the defendants as set forth in this complaint in the amount of $ 950,000, for unpaid wages, unpaid overtime, mental and emotional distress, humiliation, retaliation, discrimination based on heritage, gender, and sex, and numerous other described misconduct as a direct and proximate result of the malfeasance, and misfeasance of duty by the defendants.

PLAINTIFF DEMANDS TRIAL BY JURY

May 24, 2023

<u>VERIFICATION</u>

I, Gregory Langadinos Lawyer and graduate of an ABA Accredited Law School, and self-represented plaintiff in the above-entitled complaint. I have read the foregoing complaint and know the contents thereof. The matters alleged are based on information and belief, which I believe to be true. On Wednesday May 24, 2023, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Norco, Riverside, California

Respectfully submitted,

Gregory Langadinos J.D., M.P.A.
1801 Town and Country Drive
P.O. Box # 6050
Norco, CA 92860
glangadinos@yahoo.com
(949) 844-0250
Informa Pauperis self-represented Lawyer for Plaintiff Langadinos

Dated: *May 24, 2023*





**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Los Angeles District Office
255 East Temple St, 4th Floor
Los Angeles, CA 90012
(213) 785-3090
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 02/23/2023

**To:** Gregory Langadinos
1801 Town and Country Drive  P.O. Box 6050
Norco, CA 92860
Charge No: 480-2023-02056

EEOC Representative and email:    TODD MATTOX
EEOC INVESTIGATOR
TODD.MATTOX@EEOC.GOV

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By:Christine Park-Gonzalez
02/23/2023
Christine Park-Gonzalez
District Director

**Cc:**
Jen Cornell
GBG LLP
601 MONTGOMERY ST STE 1150
San Francisco, CA 94111

Amanda Osowski
GBG LLP
601 MONTGOMERY ST STE 1150
San Francisco, CA 94111

Christopher Ryan
2900 Corporate Place
Chanhassen, MN 55317

Please retain this notice for your records.

# EXHIBIT "2"

**STATE OF CALIFORNIA**                                                Gavin Newsom, *Governor*

DEPARTMENT OF INDUSTRIAL RELATIONS
Labor Commissioner's Office
*Retaliation Complaint Investigation Unit*
2 MacArthur Place Ste. 800
Santa Ana, CA 92707
Phone: (714) 558-4913 Email: osharetaliation@dir.ca.gov

October 20, 2022

Gregory Langadinos
61 PARK ST APT 8J
BROOKLINE, MA 02446
glangadinos@yahoo.com

Re:    Gregory Langadinos v. Lifetime Fitness, Inc.
       State Case No. RCI-CM-886525

Dear Gregory Langadinos:

This office has received your retaliation complaint, filed with this office on May 22, 2022, alleging that you suffered unlawful retaliation in violation of California law.

**Parties are encouraged to engage in settlement discussions amongst themselves. Alternatively, if you are interested in participating in an informal meeting to resolve your complaint, please send an email to retaliation@dir.ca.gov with "SETTLEMENT" in the subject line. Your participation is voluntary. Only if both parties agree, your case <u>will be temporarily assigned</u> to a Deputy Labor Commissioner who is experienced in working with parties to reach satisfactory settlements.**

**Please keep in mind that RCI investigations can be lengthy and may not result in your desired outcome. Settlement allows the parties to come to a compromise and provide relief, resolution, and peace of mind.**

As soon as the case is assigned to an investigator, you and the employer will be contacted and given an opportunity to present documents, position statements, or witness names to support your respective positions. Hold on to these documents until the assigned investigator requests them from you.

We suggest that you obtain the first and last names, addresses, and telephone numbers for witnesses who may be able to tell us more about your claim. Also, please save any documentation that you may have, such as wage statements, emails, letters, text messages, or notices. It is helpful if you keep notes of any conversations you have had, noting the date and with whom the conversation took place. Also, if you have a recollection of what happened, it is helpful if you write it down while your memory is fresh. A chronology of events can be very useful.

Do not delete, destroy, or discard any potential evidence that relates to the claims, facts, or defenses raised by the complaint. This includes, but is not limited to, any

RCI 4.3 CASE ACCEPTED WITHOUT DEPUTY ASSIGNMENT (REV. 12/20)

State Case No. RCI-CM-886525
October 20, 2022
Page 2 of 2

relevant electronic evidence, such as text messages, social media posts, emails, or voicemails. If you have a policy or practice of regularly deleting, destroying, or discarding documents, information, or things, those policies or practices should be suspended in relation to any potential evidence. Deleting, destroying, or discarding any potential evidence is against the law.

Please tell us if your address or phone number changes.  If we are unable to contact you, we will be unable to proceed with the investigation, and we will be forced to close your case.

The enclosed "Summary of Procedures" will provide additional information about our process.  Again, we will be in contact with you to let you know who the investigator is that will be investigating your complaint.

During the investigation, you are required to mitigate your damages by looking for other employment or working elsewhere. As you apply for employment opportunities, keep detailed records of the positions you apply for, any interviews that you attend, and any employment offers that are made to you. If you do accept an offer, please let me know. Keeping these records will assist the agency with calculating and proving what you may be owed.

If you filed a retaliation complaint because you made a workplace health or safety complaint, you may also file a separate complaint with the U.S. Department of Labor within 30 days of the date of the violation.

Keep in mind that legal claims cannot be brought indefinitely; legal claims have a "statute of limitations," which is a time limit. Filing a complaint with our agency may not prevent the statute of limitations from running out on all the claims you may have, so if you are interested in pursuing this claim or other related claims in a lawsuit, consult with an attorney right away.

Sincerely,

Toinye Williams
Industrial Relations Representative

RCI 4.3 CASE ACCEPTED WITHOUT DEPUTY ASSIGNMENT (REV. 12/20)

# RETALIATION AND DISCRIMINATION COMPLAINTS



### Labor Commissioner's Office

### Summary of Procedures

Employees, former employees, and applicants for employment who suffer retaliation or discrimination by their employer because they engaged in an activity protected by a law under the jurisdiction of the Labor Commissioner may file a complaint with the Labor Commissioner's Office. The Labor Commissioner's Office is also known as the Division of Labor Standards Enforcement or DLSE. A summary of procedures used by the Labor Commissioner's Office to investigate complaints under Labor Code section 98.7 is described below.

In the event your address or contact information changes during the investigation it is important that you notify our office. This requirement applies to employees as well as employers.

**Retaliation**
Retaliation occurs when an employee engages in an activity protected by law and then suffers an adverse employment action as a result of that protected activity. Adverse actions may include such things as discharge, demotion, suspension, reduction in pay or hours, refusal to hire or promote, immigration related threats, and other adverse employment actions.

**Preparing a Complaint**
The retaliation complaint form can be completed and filed on-line at:
www.dir.ca.gov/dlse/Filing_your_complaint.htm, or a paper form (RCI 1) may be used to prepare a retaliation complaint. The paper form may be obtained by calling or visiting any Labor Commissioner's Office or it can be downloaded.

When preparing a complaint, enter all of the information that is requested on the form in the spaces provided. Sign and date the completed paper form. Copies of any supporting documents may be submitted as attachments, but cannot be used instead of a completing the complaint form. Do not submit original documents, retain the originals for your records.

**Time Limits for Filing a Complaint**
In most cases, an employee, former employee, or job applicant alleging retaliation under a law within the jurisdiction of the Labor Commissioner must file the complaint with the Labor Commissioner's Office within one year of the adverse action.

There are a few exceptions to the one year deadline. A complaint alleging retaliation for complaining about a violation of licensing regulations or other laws related to child day care facilities (Health and Safety Code Section 1596.881) must be filed within 90 days after the adverse action. A complaint alleging retaliation against a minor must be filed within the applicable period, but the start of that period is delayed until the minor is 18 years old (Labor Code section 1311.5).

A pay disparity complaint alleging that a worker was paid less for substantially similar work than an employee of the opposite sex, or another race or ethnicity (Labor Code section 1197.5) must be filed within two years of

the alleged violation or within three years of a willful violation. However, a retaliation complaint alleging that a worker was punished for asking about a lower rate of pay must be filed within one year.

Additionally, any employee, former employee, or job applicant who alleges retaliation for having complained about a workplace health or safety issue has a separate right to file a concurrent complaint with federal OSHA within 30 days of the adverse action.

**Filing a Complaint**
The retaliation complaint form (RCI 1) can be filed in person at any local Labor Commissioner's Office. The form can also be filed by mailing it to either of following locations:

> Labor Commissioner
> Retaliation Complaint Investigation Unit
> 2031 Howe Ave., Ste. 100
> Sacramento, CA  95825

> Labor Commissioner
> Retaliation Complaint Investigation Unit
> 320 W. Fourth St., Ste. 450
> Los Angeles, CA  90013

When a form is filled in online, the form is automatically submitted to the Labor Commissioner's Office after the Submit button is successfully clicked on the last page of the online form.

**Review of the Complaint**
After the complaint is filed, it will be reviewed and preliminary information will be gathered to determine whether the Labor Commissioner has jurisdiction over the issues raised. If it is determined that the Labor Commissioner has jurisdiction, the complaint will be accepted for investigation.

**Investigation of the Complaint**
After the complaint has been accepted for investigation, the employee, former employee, or job applicant will be contacted by a Deputy Labor Commissioner in the Retaliation Complaint Investigation Unit. The Deputy Labor Commissioner will be your primary contact person and will conduct the investigation into the complaint. The investigator is a neutral fact-finder. They do not represent either party at any time during the investigation. The investigator cannot provide legal advice to any party.

Labor Code section 98.7 requires the investigator to interview the worker, the employer, and relevant witnesses, individuals who possess information regarding the alleged violations. To protect the identity of non-management witnesses, the investigator cannot confirm or deny who is actually interviewed. Such witnesses are confidential and may not be disclosed to either party.
The investigator may request the parties meet in a conference in furtherance of the investigation and to explore settlement. Cooperation by both parties is essential to ensure that all available facts are uncovered in the investigation. The Retaliation Complaint Investigation Unit has the authority to issue subpoenas to obtain evidence related to the case. Information obtained during the investigation is subject to Public Records Act requests, and therefore is not confidential. However, the identity of witnesses shall remain confidential, unless disclosure is required for a civil action filed by the Labor Commissioner.

When a complainant files a pay disparity complaint under the Equal Pay Act (EPA), Labor Code section 1197.5, the investigator will not disclose the complainant's name until the validity of the complaint is determined, unless disclosing the name becomes necessary to investigate the complaint. The complainant's name will remain confidential if the complaint is withdrawn before the name is disclosed.

**Interviews with Complainant**
The individual who filed the claim, the complainant, is required to make themselves available for interviews. In a typical investigation, the complainant is interviewed two or three times. There is an initial interview to establish the fundamentals of a retaliation claim, or prima facie case. Often times the investigator will schedule an additional interview to review the employer's response. It is essential that the complainant participate in interviews. Letters or emails are not sufficient to adequately test the allegations or to evaluate the employer's version of events. If the individual refuses the initial interview, the case will be closed for lack of cooperation. In the event subsequent interview requests are refused, the investigator will determine whether there is sufficient evidence to proceed or if the case will be closed for lack of cooperation.

**Hearing on the Complaint**
In a very limited number of cases, and at the sole discretion of the Retaliation Complaint Investigation Unit, the Labor Commissioner may order a hearing to establish the relevant facts before concluding the investigation. The hearing is an informal, investigative proceeding. A hearing officer conducts the hearing, and both sides may bring an attorney, union representative, or other person of their choice to represent them.

The Labor Commissioner may subpoena witnesses and documents for the hearing. If the Labor Commissioner issues a subpoena requested by a party, that party is required to pay applicable witness fees. After the hearing, the hearing officer will file findings of fact and conclusions as part of the investigation.

**Results of Investigation**
Once the investigation is complete, if no settlement has been reached, the investigator will prepare an investigation report that will be submitted to the Labor Commissioner or other designee to make a determination.

**The Determination Letter**
The Labor Commissioner will review the investigative report and send the parties a determination letter; the letter will outline the evidence established during the investigation and report the findings of the investigation.

***Result of the Investigation Is a Cause or Merit Finding***
If the Labor Commissioner determines that the employer violated the law by retaliating against the employee, former employee, or job applicant, the employer will be given 30 days to comply with the order in the determination letter and remedy the retaliation, or attempt to settle the case.

In cases where the Labor Commissioner has determined that sufficient evidence exists to support a finding of retaliation, the Labor Commissioner may order a variety of remedies including reinstatement, payment of lost wages, interest on the lost wages, removal of related negative reports in the employee personnel file, and the posting of a notice acknowledging the retaliation.

In addition, Labor Code sections 98.6 and 1019.1 provide for a penalty amount of up to $10,000 per violation, payable to the worker if the evidence establishes retaliatory conduct by the employer. Other penalties may be assessed for violations of the Healthy Family, Healthy Workplace statute and Labor Code sections 1311.5 and 2814. For employers that are corporations and limited liability companies, Labor Code section 1102.5 provides for an additional penalty of up to $10,000 for each violation of that section. This penalty is payable to the State.

If the employer fails to comply with the requirements of the determination letter in the time required, an attorney for the Labor Commissioner will file a court action to enforce the determination letter and collect the assessed damages and penalties. The employer may also be held responsible for the Labor Commissioner's attorney's fees.

**Citation, in lieu of Determination Letter**
The Labor Commissioner may decide to select certain cases for citation. This means that if the Labor Commissioner determines that there has been retaliation, a determination letter will not issue and a citation will

issue instead. The employer has the option of appealing the citation, but if no appeal is filed, then employer must pay the citation amount or it becomes a final judgment; once there is a final judgment, the Labor Commissioner's office can then begin to try to collect on the judgment.

If a timely appeal is filed, then a hearing is held before a hearing officer. The hearing will be like an informal court case; the hearing officer is like a judge, and the Labor Commissioner will present evidence, such as emails or employment records, and employee testimony to support the citation. Then, the hearing officer will issue a written decision, which becomes a final judgment if the employer does not challenge the decision by filing a writ in superior court.

If a writ is filed, a judge will review the hearing officer's decision for "substantial evidence." The employer must also file a bond for the citation amount with the writ; this guarantees that the citation amount will be paid if the employer loses on writ.

***Result of the Investigation is a Dismissal of the Complaint***
If the Labor Commissioner determines that there is insufficient evidence of retaliation, the Labor Commissioner will dismiss the case and take no further action. The employee, former employee, or job applicant may file a civil complaint against the employer to pursue the matter further.

**Appeal Rights**
Complaints alleging violation of Labor Code section 6310 or 6311 (related to workplace health and safety) include appeal rights for the worker if the Labor Commissioner dismisses the complaint for insufficient evidence of retaliation. There is no appeal right under these provisions for the employer.

The worker's right to appeal is required by federal OSHA, and the Labor Commissioner's Office is required to provide the same appeal right for violations of Labor Code section 6310 and 6311. The appeal is made to the Director of Industrial Relations. In the appeal, the worker must state the grounds for the appeal and the reason the decision is unjust or unlawful. Every issue to be considered by the Director must be identified. The Director will provide all parties with a copy of the appeal, allowing an opportunity to respond. The worker must file the appeal within 15 days of the date of receipt of the determination letter. The appeal must be filed in writing and mailed to the Director of the Department of Industrial Relations at:

Office of the Director - Legal Unit, RCI Appeals
1515 Clay St., Ste. 701
Oakland, CA 94612

In addition to the appeal right discussed above, individuals who have filed complaints alleging retaliation for complaining about a workplace health and safety issue, have the right to file a Complaint Against State Program Administration (CASPA) with the federal Occupational Safety and Health Administration (OSHA). In this complaint to OSHA, an individual who is not satisfied with the procedures followed in the Labor Commissioner's investigation may request that federal OSHA review the case file to ensure the case was appropriately investigated. A CASPA complaint can only be filed after appeal rights with the State have been exhausted. A CASPA complaint is filed at:

U.S. Department of Labor - OSHA
Attention: Area Director
Ronald Dellums Federal Building
1301 Clay St., Ste. 1080N
Oakland, CA 94612

**Contact the Labor Commissioner's Office**
If you have questions regarding investigation procedures followed by the Labor Commissioner's Office, please contact the Retaliation Complaint Investigation Unit by calling (916) 263-2991, or by email at

RCI 3.1 SUMMARY OF PROCEDURES (REV. 1/21)

retaliation@dir.ca.gov. If you have questions regarding a retaliation claim based on workplace health and safety (OSHA), please call (714) 558-4913, or email OSHAretaliation@dir.ca.gov.

**Retaliation State Case No. RCI-CM-886525**

glangadinos@yah.../Inbox

 **DIR OSHARetaliation** <osharetaliation@dir.ca.gov>
To: glangadinos@yahoo.com <glangadinos@yahoo.com>

Oct 20 at 5:14 PM

Hello,

Please see the following attachment regarding your case.

Thank you.

**Labor Commissioner's** Office
*Retaliation Complaint Investigation Unit*
Santa Ana District Office



**IMPORTANT/CONFIDENTIAL:** This email communication is intended only for the use of the individual or entity to which it is addressed. This email message and any attachments contains information from the California State Department of Industrial Relations, Division of Labor Standards Enforcement, which is privileged, confidential, and exempt from disclosure under applicable law, including the Electronic Communications Privacy Act. If the reader of this communication is not the intended recipient, you are hereby notified that this email should be destroyed, and that any dissemination, distribution, or copy of this communication is strictly prohibited.

**1 File**   512.1kB

INT LTR 4.3 10.20.2022 RCI-CM-886525.pdf
512kB

# EXHIBIT "3"

U.S. Department of Labor

Occupational Safety and Health Administration
San Francisco Federal Building
90 7th Street, Suite 2650
San Francisco, CA  94103



**Via Electronic Mail**
July 7, 2022

Gregory Langadinos
1801 Town and Country Drive
P.O. Box 6050
Norco, CA  92860
Email: glangadinos@yahoo.com

Re: Life Time Group Holdings Inc./Langadinos/9-3290-22-523

Dear Mr. Langadinos:

This is to acknowledge receipt of your whistleblower retaliation complaint, which was filed on May 22, 2022 against Life Time Group Holdings Inc. (Respondent) under the Consumer Financial Protection Act of 2010 (CFPA), Section 1057 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, 12 U.S.C.A. §5567; the Sarbanes-Oxley Act (SOX), 18 U.S.C.A. §1514A; the Anti-Money Laundering Act (AMLA), 31 U.S.C. §5323(g) & (j); and the Criminal Antitrust Anti-Retaliation Act (CAARA), 15 U.S.C. § 7a-3.  In brief, the complaint alleged that on or about March 1, 2022, your employment was terminated in retaliation for your complaints about what you believed to be violations of anti-money laundering laws, antitrust laws, consumer financial protection laws and/or shareholder fraud.

This letter is also to notify you that the Secretary of Labor, acting through his agent, the Regional Administrator for the Occupational Safety and Health Administration (OSHA), Region IX, issues the following findings:

## Secretary's Findings

The complaint alleges that on or about March 1, 2022, Respondent terminated Complainant's employment. On May 22, 2022, Complainant filed a complaint with the Secretary of Labor alleging retaliation in violation of CFPA, SOX, AMLA and CAARA.  This complaint is deemed timely as this complaint was filed within 90 days of the alleged adverse action, per requirements of AMLA, and this complaint was filed within 180 days of the alleged adverse action, per requirements of CFPA, SOX, and CAARA.

Respondent is not covered under the CFPA because Respondent is not a covered person or service provider within the meaning 12 U.S.C. §5567, and Complainant is not an employee within the meaning of 12 U.S.C. §5567. A *covered person* is a person that engages in offering or providing a consumer financial product or service. A *service provider* is a person that provides a material service to a covered person in connection with the covered person's offering or provision of a consumer financial product or service. A *covered employee* is any individual performing tasks related to the offering or provision of a consumer financial product or service. Respondent does not provide consumer financial products or services; it provides gym memberships. And even if

Respondent did offer such products or services, Complainant contends that he was a Fitness Instructor, which is not a covered employee under CFPA.

Respondent is covered under the SOX because Respondent is a company within the meaning of 18 U.S.C. §1514A in that the company is required to file reports under Section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. §78o(d)). However, Complainant is not covered under the SOX because Complainant is not an employee within the meaning of 18 U.S.C. §1514A.

Respondent is covered under the AMLA because Respondent is an employer within the meaning of 31 U.S.C. § 5323(g) & (j), but Complainant is not an employee within the meaning of 31 U.S.C. § 5323(g) & (j).

Respondent is covered under the CAARA because Respondent is an employer within the meaning of 15 U.S.C. § 7a-3 but Complainant is not an employee within the meaning of 15 U.S.C. § 7a-3.

The burden of establishing that Complainant was retaliated against in violation of CFPA, SOX, AMLA and CAARA cannot be sustained. The complaint failed to show that both of the parties were covered under the employee protection provisions of the statutes. Specifically, the evidence failed to show that Complainant was an employee of Respondent. Complainant provided a signed form acknowledging that he had received a copy of Respondent's Group Fitness Instructor Manual as the only proof of employment. However, Complainant acknowledges that he never received a paycheck and when Respondent terminated his gym/club membership, no mention was made of any employment relationship. Based on this evidence, Complainant's claim to be an employee of Respondent is not credible. Therefore, Complainant is not a covered employee under CFPA, SOX, AMLA and/or CAARA.

In addition, Complainant's allegations did not make a 'prima facie' showing. Even if Complainant could prove an employment relationship, his allegations do not support that he engaged in protected activity under CFPA, SOX, AMLA and/or CAARA. For these reasons, the complaint is dismissed.

Respondent and Complainant have 30 days from the receipt of these Findings to file objections and to request a hearing before an Administrative Law Judge (ALJ). If no objections are filed, these Findings will become final and not subject to court review. Objections must be filed in writing with:

**Primary method** - via email to: OALJ-Filings@dol.gov

**Secondary method -** (if unable to file via email) via hard copy submission to:

>Chief Administrative Law Judge
>Office of Administrative Law Judges
>U.S. Department of Labor
>800 K Street NW, Suite 400 North
>Washington, D.C. 20001-8002
>Phone: (202) 693-7300
>Fax: (202) 693-7365

*With copies to*:

Christopher Ryan
Senior Associate General Counsel
Life Time Group Holdings, Inc.
2902 Corporate Place
Chanhassen, Minnesota 55317
Email: cryan3@lt.life

Jim Wulff
Regional Administrator
U.S. Department of Labor – OSHA
90 7th Street, Suite 2650
San Francisco, CA 94103
Email: OSHA-REG09-WB@DOL.gov

In addition, please be advised that the U.S. Department of Labor does not represent any party in the hearing; rather, each party presents his or her own case. The hearing is an adversarial proceeding before an ALJ in which the parties are allowed an opportunity to present their evidence for the record. The ALJ who conducts the hearing will issue a decision based on the evidence and arguments presented by the parties. Review of the ALJ's decision may be sought from the Administrative Review Board, to which the Secretary of Labor has delegated responsibility for issuing final agency decisions under the Act. A copy of this letter has been sent to the Chief Administrative Law Judge along with a copy of your complaint.

The rules and procedures for handling CFPA, SOX, AMLA and CAARA cases can be found in Title 29 of the Code of Federal Regulations, Parts 1979, 1980 and 1985 and may be obtained at www.whistleblowers.gov.

Sincerely,

MATTHEW PARRA    Digitally signed by MATTHEW PARRA
Date: 2022.07.07 17:12:53 -07'00'

Matthew B. Parra, Esq.
Assistant Regional Administrator

cc:  Christopher Ryan, Life Time Group Holdings, Inc.
     Chief Administrative Law Judge, USDOL
     U.S. Securities & Exchange Commission
     Antitrust Division, USDOJ
     Civil Fraud Division, USDOJ
     U.S. Consumer Financial Protection Bureau
     U.S. Department of the Treasury

## Case Activity Worksheet

Run Date: 07/08/22

Occupational Safety and Health Administration

| Filed Date: | 05/22/22 | Local Case Number: | 9-3290-22-523 | | Activity Number: | 3067019 | Reporting ID: | 0900000 |
|---|---|---|---|---|---|---|---|---|
| Case Type: | SOX | Statutory Implication: | AMLA | CAARA | CFPA | | | |
| Allegation: | M - Complaint with management | | | Investigator: MCDEVITT,PAUL | | | Assigned Date: | 05/23/22 |

| Allegation Summary: | On or about March 1, 2022, Complainant?s employment was terminated in retaliation for his complaints about what he believed to be violations of anti-money laundering laws, antitrust laws, consumer financial protection laws and corporate fraud. Complainant believes that Respondent has violated the Anti-Money Laundering Act (AMLA), 31 U.S.C. §5323(g) & (j); the Criminal Antitrust Anti-Retaliation Act (CAARA), 15 U.S.C. § 7a-3; the Consumer Financial Protection Act of 2010 (CFPA), Section 1057 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, 12 U.S.C.A. §5567; and the Sarbanes-Oxley Act (SOX), 18 U.S.C.A. §1514A. |
|---|---|

| Respondent Information | Name: LIFETIME GROUP HOLDINGS INC., d/b/a/ LIFETIME | | Phones: | | Emails: |
|---|---|---|---|---|---|
| Primary Address: | 25600 Rancho Niguel Rd. | V | (949)238-2700 | | |
| | Laguna Niguel CA 92677 UNITED STATES | | | | |
| Alternate Address: | | | | | |

| Complainant Information | Name: Gregory none Langadi Langadinos | | Phones: | | Emails: |
|---|---|---|---|---|---|
| Primary Address: | 1801 Town and Country Drive P.O. BOX 6050 | W | (949)844-0250 | | glangadinos@yahoo.com |
| | | C | (617)650-2693 | | |
| | Norco, CA 92860 | H | (617)650-2693 | | |

| Determination Date | Determination | Total Compensation | | $0 | | Reinstatement | N |
|---|---|---|---|---|---|---|---|
| 07/08/22 | Agency Dismissed/Non-merit | | | | | | |

I certify that the complaint was filed with me on(date): May 22, 2022

| Signature | Title | Date |
|---|---|---|
| PAUL MCDEVITT  Digitally signed by PAUL MCDEVITT Date: 2022.07.08 08:37:54 -07'00' | Investigator | July 8, 2022 |

Note:This report contains sensitive information that may not be appropriate for distribution outside
OSHA. Local offices should review the information BEFORE it is provided to outside requestor.

# EXHIBIT "4"

Daniel Murillo
33582 Blue Lantern Street Apt 1
Dana Point, CA 92629
(949) 424-9279
evoixdan@gmail.com

### DECLARATION/AFFIDAVIT OF DANIEL MURILLO IN SUPPORT OF TEMPORARY RESTRAINING ORDER/INJUNCTION AGAINST LIFETIME ATHLETIC LAGUNA NIGUEL, California, for VIOLATIONS OF Section 806 of Sarbanes-Oxley, 18 U.S.C. § 1514A, and criminal bookmaking in violation of 18 USC section 1955

I, Daniel Murillo depose and state the following under oath under the pains and penalties of perjury;

1.   My name is Daniel Murillo, and I am an adult of sound mind above age 18.

2.   I am a native of Baltimore, Maryland, who now lives in Dana Point, California,

and a member of Lifetime Athletic located in Laguna Niguel.

3.   I have self-prepared and signed this sworn Affidavit to describe the personal

knowledge I have about illegal bookmaking and gambling in violation of federal

laws, including illegal gambling under 18 USC section 1955, as well as

discriminatory actions against Lifetime employee and Gym member, Gregory

Langadinos in violation of Section 806 of Sarbanes-Oxley, codified at 18 U.S.C. §

1514A, the Lifetime Code of Conduct, the Lifetime Employee Handbook, IHRSA

Code of Conduct, IHRSA Bylaws, and interference with my ability to work out and

use the Lifetime Laguna Niguel health club because of the threatening behavior I

have experienced by the two 20 year old; bookmakers/gamblers who have

1

threatened and harassed me for refusing to accept their invitations to bet on sports events and Lifetime basketball teams.

4.    I met Mr. Langadinos over a year ago at throughout the Lifetime Laguna Niguel facility.  He is the most dedicated gym member that I have ever met.

5.    I have self-prepared this Declaration/Affidavit, to outline the personal knowledge I have about the criminal activity I am familiar with that is occurring within Lifetime Athletic within the Laguna Nigel location., as well as mistreatment of Mr. Langadinos, by Mr. Barry Stevens, who unfairly meets with certain members that have complaints filed against them to immediately resolve dispute, while Mr. Langadinos is not afforded that same process, and instead he has his membership terminated, by corporate officials in Minnesota, who lack personal knowledge of any events, or whatever was alleged, without even allowing Mr. Langadinos to speak of provide his side of the story or his own witnesses, like myself.

6.    I have personal knowledge that over the last year, Mr. Gregory Langadinos was solicited, offered work at Lifetime Athletic, who provided his expertise about weightlifting, training, diet, to numerous of Lifetime Gym members, and actual

2

DM

Full-time employees, including current and former trainers, utilizing 35 years of experience to spread his wealth of knowledge.

7.    I have personal knowledge that Mr. Langadinos was offered and accepted work as a personal trainer at Lifetime by former Sales Staff member Darren, (who relocated to New York City to another Lifetime Fitness Health Club); and was known to provide training to numerous other Lifetime trainers, gym members and officials.

8.    Over the last two months, I have personally witnessed, a young gym member named Lucas, and his friend, whose name I am not familiar with, [who owns a $ 200,000 McLauren vehicle, which he told me he bought with gambling and bookmaking]; and I have watched both these two young 20 year old's, count hundreds and thousands of dollars in the locker room, which they stated was earned from betting on basketball games upstairs in the third-floor basketball courts from bookmaking and gambling.

9.    In addition, I have personal knowledge and I am familiar with another gym member named Joe, who is openly homosexual, and demands his rights through LGBT community, yet one month ago or less, while Joe was driving his silver BMW in the parking garage adjacent to the Lifetime Gym in Laguna Nigel, Joe screamed

at Seth, who is African American and works at the front desk and called him a "Nigger."

10.  I have personal knowledge that when Lifetime Team member Seth reported being screamed the racial epithet Nigger to Barry Stevens, Barry personally met with Joe, and interviewed Joe about this open and shut case of racial discrimination of the worst kind, without terminating his membership as occurred to Mr. Langadinos, for allegations that he was never told what they are.

11.  I have personal knowledge that The Lifetime Gym member Joe called Seth a Nigger, and said he blamed it on the skateboarders, in the parking garage, and Barry Stevens accepted this explanation from Joe.

12.  Neither Barry Stevens, or any of his subordinate staff under him within Lifetime Laguna Nigel, or anyone at corporate, ever took adverse action against the open Homosexual Gym member, named Joe, for calling an African American Lifetime employee Seth a Nigger; the worst racist word of all time.

13.  However, when Mr. Langadinos had a complaint filed against him, neither Barry, or Brad, or any other staff that words for Barry ever approached Mr. Langadinos or provided him an opportunity to provide his side of the story, or

4

DM

emailed or spoke to him, to get his side of the story, or asked Mr. Langadinos to identify and disclose his own witnesses, such as myself.

14.    Neither did Joe, the open homosexual Gym member, ever have his membership terminated, or suspended, for calling a current Lifetime employee a Nigger, or until an investigation is conducted.

15.  I furthermore a witness to the illegal criminal gambling enterprise that has been brought to Lifetime located in Laguna Niguel, however, nobody has ever spoken to about the criminal behavior of the two young members or how both these members have repeatedly harassed Mr. Langadinos and asked him to work as their own personal bodyguards.

16.    I have provided permission and consent and permitted Mr. Langadinos to use this Affidavit in and file it before any United States Assistant Attorney General; Federal United States Agency, or any State of California State Agency, or any Minnesota Department of Human Rights.

17.  I have been unable to workout at Lifetime Athletic in Laguna Niguel for the last 6 weeks and have not checked in to workout at Lifetime Laguna, because of the threats, and harassment I have been subjected to by the two young bookmaker, bookies, and have suffered severe emotional distress.

5

DM

18.    The General Manager of Lifetime Laguna Niguel, CA, Barry Stevens is responsible for failing take swift and immediate action to terminate the gym memberships of the two criminal bookmakers, Lucas, and John Doe 2, for bringing their criminal enterprise to operate within Lifetime Laguna Nigel.

19.    There are many other witnesses, including gym members, and actual present Lifetime employees, who I have spoken to and who are familiar with, and who have personal knowledge about the mistreatment that Mr. Langadinos has been subjected to, the double standard where he is denied due process and a chance to provide his side of the story.

20.    A current full-time Lifetime Team Members, who wishes to remain anonymous, and who supports Mr. Gregory Langadinos for the unlawful discriminatory behavior he has suffered by Lifetime Management both at the Laguna Niguel location, and by officials within the corporate location in Minnesota, has provided me with copies of the (A. Lifetime Sexual Harassment Policy), and (B. portions of the Employee Handbook), and the (Letter from Human Resources), and which also prohibits discrimination based on race, gender, and disability, to attach to this Affidavit.  See Attachments A, B, and C.

6

21.    I am willing and able to speak or write to Lifetime Human Recourses officials about the personal knowledge I have about the statements and facts described within this sworn Affidavit.

22.    I have personal knowledge of several current full-time employees of Lifetime that have communicated with me about the active and on-going reverse discrimination towards White persons, out of State gym members, being treated differently than native Californians.

23.    My ability to exercise and workout at Lifetime in Laguna Niguel over the last 6 weeks, has been severely disrupted, because of the ongoing distress I have experienced from the young 20-year-old bookmakers that were sold gym memberships, and allowed to continue to be gym members even after upper management including Barry Stevens has been made aware of the illegal bookmaking and gambling criminal enterprise within Lifetime in Laguna Niguel.

24.    I have personal knowledge, and I am competent to testify as to all of the above paragraphs under oath.

SWORN TO UNDER THE PAINS AND PENALTIES OF PERJURY ON THIS____6^th____DAY OF MARCH 2022.

7

# EXHIBIT "5"

Daniel Murillo
33582 Blue Lantern Street Apt.#1
Dana Point, CA 92629
(949) 424-9279

## DECLARATION/AFFIDAVIT OF DANIEL MURILLO

I, Daniel Murillo depose and state the following under oath under the pains and penalties of perjury;

1.    My name is Daniel Murillo, and I am an adult of sound mind above age 18.

2.    I am a Consumer, Customer, and former member of Life Time, Inc. a chain of health clubs in the United States and Canada, and specificality the location where I suffered sexual assault and battery, as well as solicitation by bookmakers, (bookies), and harassed and intimidated me by threatening me unless I bet on games, including basketball games, played within Lifetime, at the gymnasium upstairs on the third floor; following address; 25600 Rancho Niguel Rd. Laguna Niguel, CA 92677· (949) 238-2700.  I was forced to cancel my membership because I have been sexually assaulted, (touched by another male), and solicited for homosexual sex); and because I have been harassed by young bookies, and bookmakers, (including Curtis last name unknown,

1

and his partner name unknown); that have asked me to bet on basketball games played upstairs in the Lifetime gymnasium.

3.      I am providing this sworn Declaration/Affidavit in support of a formal investigation of Lifetime ·located at 25600 Rancho Niguel Rd. Laguna Niguel, CA, , 92677 as well as investigating the two separate owners of Lifetime Holdings Group Inc., doing business as Lifetime Athletic Center· 25600 Rancho Niguel Rd. Laguna Niguel, CA 92677· (949) 238-2700, who are venture capitalist publicly traded corporations on the New York stock exchange, as well as Lifetime Holdings Group Inc., which is also a publicly traded corporation governed by the Securities Exchange Commission as well as the Federal Trade Commission.

4.      Lifetime Holdings Group Inc., is owned by two separate venture capitalist (VC) corporations, which are both private equity investors that have provided capital Lifetime Athletic in exchange for a majority ownership equity stake in Lifetime stock, and majority of other capital and properties. The first owner is Leonard Green & Partners of Los Angeles, and the second owner is TPG of San Francisco, CA, who both jointly purchased the Chanhassen, Minnesota-based Lifetime Fitness

2

company, without investigating sexual batteries, male-on-male sexual assaults, or gambling and money laundering in violation of the Federal Money Laundering Act of year 2021. See Exhibit "3" herein.

5.      I am also a Federal Whistleblower who has personal knowledge about illegal gambling operation and bookies that place bets on basketball games and the Lifetime Athletic teams which is occurring with this gymnasium on the third floor of the Lifetime · 25600 Rancho Niguel Rd. Laguna Niguel, CA, 92677; in violation of the Federal Money Laundering Act of year 2021.

6.      I have further engaged in protected activity by reporting the ongoing criminal behavior occurring within Life Time Health Club located at 25600 Rancho Niguel Rd. Laguna Niguel, CA, 92677, and the ongoing and reoccurring sexual predatory behavior by male gym members that have physically touched me, on numerous occasions, and even requested oral sex, which I have reported to the General Manager Barry Stevens, and his Assistant Olivia Maurer, and corporate headquarters, but nobody ever took action or halted these criminal behaviors.

7.      Furthermore, I have further engaged in protected activity and acted as a whistleblower by submitting information through An email dated May 19, 2022, (*<u>See Exhibit "1" herein</u>)' about numerous violations of the BSA and its regulations that has occurred, is ongoing, or is about to occur, including violations by Lifetime Athletic and its owners covered financial institution which have failed to have an effective overall compliance program in place to deter or halt illegal gambling, and failures with respect to specific compliance program components or "pillars"; and systemic and recurring noncompliance with BSA requirements.

8.      On Thursday May 19, 2022, at 6:36 PM, I reported by email to the General Manager Barry Stevens the ongoing criminal behavior occurring within Lifetime Health Club located at 25600 Rancho Niguel Rd. Laguna Niguel, CA, 92677, that there is an ongoing and reoccurring illegal gambling operation of bookmaking, betting by young bookies. <u>See Exhibit "1"</u> email I sent to Barry Stevens, and response to my email by Stevens.

9.    Although, Mr. Stevens did respond to my email, the next day on May 20, 2022, at 2:38 PM, and referred to the sexual

4

battery I suffered, he purposely ignored mentioning the
bookmaking gambling behavior, which I believe Mr. Stevens is
personally profiting from, and being paid off to allow these
illegal gambling profiteering schemes to continue based on
what the bookie himself named Curtis told me while we both
sat in the jacuzzi.    See Email response of Barry Stevens
attached as Exhibit number 2.

10.    I am willing and able to testify about my personal
information I have about ongoing illegal money laundering,
before the Department of the Treasury's Financial Crimes
Enforcement Network (FinCEN) or any other Federal Agency, or
testify in any actions in United States District Court, or
any other Federal Administrative Agency proceedings which
handles investigations and charges for violations of the Bank
Secrecy Act, the Federal Money Laundering Act of year 2021,
or testify before Federal OSHA; or any other interested
Federal or State Agencies.

I have personal knowledge about all the facts within this
sworn affidavit, which I have written based on my own personal
experience and based on information and belief.

SWORN TO UNDER THE PAINS AND PENALTIES OF PERJURY ON THIS 22nd DAY OF MAY 2022.

**Daniel Murillo**

# EXHIBIT "A"

**Barry Stevens** | General Manager ~ Laguna Niguel



HEALTHY WAY OF LIFE

Life Time ~ Healthy Way of Life
P: 949.238.2700

**From:** Daniel San [mailto:evoixdan@gmail.com]
**Sent:** Thursday, May 19, 2022 6:36 PM
**To:** Barry Stevens <BStevens@lt.life>
**Subject:** [EXTERNAL] Membership - Daniel Murillo

**This email originated from outside of Life Time, Inc. Approach link, attachments, and sender with caution.**

---

Dear Mr. Stevens,

I write to formally request to cancel my Lifetime gym membership and halt any further charges from being charged to my credit card. In addition, for all the following reasons, I formally demand $15,000 from Lifetime Fitness.

I was in the past 4.5 years, a proud and motivated member of Lifetime Athletic. However, beginning around last May 2021, I have encountered non-stop sexual harassment, and solicitation for sex by another male member, named Joe, tall, wears winter hat, drives BMW, and literally asked "could you give me a blowjob" in which he was not kidding. I have been touched by Joe in a sexual manner for months.

I reported this exact behavior to Ms. Olivia Maurer, and showed her the messages on my phone. Ms. Maurer never did anything, but only made excuses for Joe, by suggesting he is homosexual and doesn't know better.

I have suffered serious anxiety from the sexual deviant behavior of Joe, your member, which frankly, your gym appears to provide cover for this ongoing sexual harassing behavior.

In fact, the behavior for which I have reported several times to Ms. Olivia Maurer, has been ongoing in other gyms nationwide.

See website below;or just google
"

Life Time Fitness Review: Gay activity in locker not being dealt with | ComplaintsBoard.com
Home
Fitness Centers
Life Time Fitness
Gay activity in locker not being dealt with

More

# Life Time Fitness - Gay activity in locker not being dealt with

J
jamesg109 of Eagan, US
Sep 12, 2010

4:16 pm

Verified customer

Review updated: Dec 06, 2021
Featured review
Lifetime Fitness appears to be the place where gay men congregate late at night due to the 24-hour schedule.

If you have noticed little slits cut in the shower curtains, this is happening at LTF clubs all over the U.S. from what I have heard. Apparently they are using these as "peep holes" so they can make eye contact with each other so they can then go do their thing in the steam rooms late at night. Frankly, this is absolutely disgusting behavior and apparently Lifetime Fitness is aware of this but doing nothing about it. Basically, they have become a "gay friendly" club, when they should be stopping this activity in a club that is supposed to be "family friendly". It doesn't matter if they are doing this mostly in the evenings, I and many other members are sick and tired of seeing this holes in the shower curtains EVERY DAMN WEEK. Some members who are pissed about this just shred the curtain so they have to put in a new one and this stupid process gets repeated week after week after week. Why don't these buffoons at Lifetime just put up those curtains that have a clear upper half. Then there would be none of this sneaky, stealth homo peak-a-boo going on in their clubs. If one of these queers gets caught staring at the wrong guy who cares if he takes a fist to the nose?"

Lastly I have suffered serious anxiety from the harassing behavior of two bookies, who aren't even 23 years old, and have solicited me to join their gambling and betting on basketball games right here in your upstairs gym betting on teams, and splitting the money outside while sitting on the concreate around the jacuzzi. One of these males, is named Curtis, and the other refuses to give his name. The unknown male drives a blue McLauren sports car, which he parks in the garage.

I've seen professional help for my anxiety issues while being a member of Lifetime Fitness. Because of my inability to workout my anxiety has increased. I believe all of this has occurred under your watch.

I am not interested in litigation, but have spoken to three attorneys about this.   I have not been able to workout at Lifetime for over three months because of the above numerous problems.  Please advise by a responsive email if you can settle this case amicably without the need for litigation.

Sincerely,
Danny Murillo


Sent from my iPhone

_____

Life Time® – Healthy Way of Life
2902 Corporate Place, Chanhassen, MN 55317
©2017 LIFE TIME, INC. All Rights Reserved

Life Time: https://www.lifetime.life/en.html
Privacy Policy: https://www.lifetime.life/en/policy/privacy-policy.html
Unsubscribe: https://www.lifetime.life/en/membership/unsubscribe.html

Life Time, Inc. may monitor email communications. This email may contain confidential or proprietary information.

# EXHIBIT "B"

 Gmail

---

## Fwd: Membership - Daniel Murillo
1 message

---

**Daniel San** <evoixdan@gmail.com>                     Sat, May 21, 2022 at 12:26 PM

Sent from my iPhone

Begin forwarded message:

> **From:** Barry Stevens <BStevens@lt.life>
> **Date:** May 20, 2022 at 2:38:57 PM PDT
> **To:** Daniel San <EvolXDan@gmail.com>
> **Subject: RE: Membership - Daniel Murillo**

Hello Mr. Murillo,

I'm sorry to hear you are requesting to cancel your membership. Due to your request, I will process an immediate membership cancellation as of today.

In regards to the additional information you provided below, I want you to know we appreciate you bringing this to our attention. We take these matters very seriously and will be conducting a full investigation regarding the details you have provided.

Unfortunately, I am not locating record of any complaints you have filed about another member named Joe. Do you have any record of filing a complaint about this member previously that we can use to help conduct the investigation? You also mention showing Olivia text messages that I'm assuming are from this member? Would you be able to provide us with the text messages as evidence into your claim so we can cross reference them against our database? Additionally, you mention being touched in a sexual manner by this member for months. Could you provide specific dates, locations and times that we can check cameras to validate your claim as well? Any additional information and evidence you can provide would greatly help expedite the investigation into your claim.

Thank you for your assistance in this matter.

# EXHIBIT "C"

# CLUB INDUSTRY

Subscribe ☰

## Life Time Fitness Acquisition Is Complete, Company Goes Private

By Eric Stromgren, Content Producer



Life Time Fitness has returned to operation as a private company.

An investor group led by affiliates of Leonard Green & Partners and TPG completed their previously announced purchase of the Chanhassen, Minnesota-based company on Wednesday. Life Time Fitness ceased trading on the New York Stock Exchange at the close of market Wednesday. The NYSE will remove Life Time Fitness from its listing on June 26.

The acquisition makes Life Time Fitness an indirect, wholly owned subsidiary of LTF Merger Sub Inc. Other investors include LNK Partners and Life Time Fitness Chairman, President and CEO Baharam Akradi. Life Time Fitness valued the merger at **more than $4 billion**.

The sale, **announced in March**, closed on schedule after it was **approved by shareholders** in a special meeting on June 4 and later received regulatory approval.

Each shareholder except Akradi has the right to receive $72.10 per share in cash as part of the transaction. Akradi committed to making a "rollover investment of $125 million in Life Time common stock" and will remain in his current role.

Akradi, who founded Life Time Fitness in 1992, was set to receive $180.24 million on the acquisition for his 2.499 million shares of common stock (6.4 percent of the company) and $28.08 million for his 389,500 restricted shares, according to an **April filing** with the Securities and Exchange Commission.

Life Time Fitness debuted on the New York Stock Exchange on June 30, 2004, at an opening price of $20.75 per share and closed Wednesday at $72.07 per share. Life Time Fitness operated 115 facilities under the Life Time Fitness and Life Time Athletic brands in the United States and Canada as of Wednesday.

In late February, Life Time reported a **7 percent revenue increase** to $1.291 billion in 2014 compared with 2013. The company ranked third last year on Club Industry's annual **Top 100 Health Clubs list** with 2013 revenue of $1.206 billion.

**Leonard Green & Partners** is a Los Angeles-based private equity firm. Its investments include Shake Shack, Whole Foods, J. Crew, Activision and Petco.

**TPG** is an international private investment firm with $67 billion in assets under management in offices around the world. Its investments include Beringer Wines, Burger King, Chobani, Neiman Marcus, Petco and Savers.

LNK Partners typically invests up to $150 million of equity per transaction. Its investments include Staples, Quaker Oats, Pepsi, Gatorade, Panera Bread and Levi Strauss.

# EXHIBIT "6"



Dear Team Member,

Welcome to Life Time Fitness! We are proud to have you join our team, and would like to take this opportunity to introduce you to our Human Resource Information System, Workday. We hope you will find it to be a valuable resource for you.

**What is Workday?** Workday is the software system Life Time Fitness uses to manage all of our team member data. This includes everything from legal names, home addresses, and emergency contacts to compensation, position, organizational hierarchy, and benefits information. Workday is web-based and it can be accessed from any computer connected to the internet. It's designed with self-service in mind, meaning team members and managers have the ability to view and modify their own information.

**What should you use Workday for?** All team members should use Workday to verify and update current contact information, to enroll in benefits (if eligible) and verify their benefits elections, and to request Paid Time Off (PTO). The first time that you log in please be sure to verify your contact information and add your emergency contacts to the system. Managers can use the system to view data about their teams and organizations, and to review PTO requests.

**How do you get access to Workday?** All team members will receive login information via their LTF email address, or the personal email address provided with your new hire paperwork, whichever is applicable. If you do not have a personal email address or did not provide one, any questions or issues with your Workday login information should be directed to the IT Help Desk at x100237 or by email at servicedesk@lifetimefitness.com. The IT Help Desk is also your point of contact for any other Workday related questions or issues.

Be sure to access the Workday system regularly as more functionality is being delivered to make your work experience here at Life Time Fitness even better.

Regards,

Human Resources

2902 Corporate Place
Chanhassen MN 55317
Tel: 952-947-0000
Fax: 952-947-0077
www.lifetimefitness.com



# FITNESS INSTRUCTOR MANUAL

### LIFE TIME FITNESS VISION

As a Healthy Way of Life Company,
Life Time helps organizations, communities and individuals achieve their
**Total health objectives,**
**Athletic aspirations and**
**Fitness goals**
by engaging in their areas of passion.

We do this by providing the
**Best places, Best programs and Best people**
of uncompromising quality and value that changes lives every day.

### LIFE TIME FITNESS MISSION STATEMENT

Our mission is to provide an educational, entertaining, friendly and inviting, functional, and innovative experience of uncompromising quality that meets the health and fitness needs of the entire family.

### GROUP FITNESS DEPARTMENTAL OBJECTIVE

To be entertaining educators who provide
a motivating experience that delivers results to our members.

13

## ACKNOWLEDGEMENT

### RECEIPT OF LIFE TIME FITNESS
### GROUP FITNESS INSTRUCTOR MANUAL

I, _____, acknowledge receipt of the LIFE TIME FITNESS Group Fitness Instructor Manual. I have read and I understand its contents and will comply with the rules, regulations, policies, etc. contained therein. I understand this manual is neither an offer nor a contract of employment.

I understand: (*check the appropriate boxes*):

☐ That Life Time Fitness, Inc. reserves the right to change, delete or add to this manual at any time without advance notice. We will try to notify you of changes as they occur.

☐ That I will follow and observe its policies.

☐ The LTF instructor substitution policy and will adhere to the guidelines contained herein.

☐ That I am required to attend mandatory Group Fitness Department and Quarterly All-Club meetings.

☐ That I cannot call into the club to cancel my scheduled class.

☐ That I am expected to give a minimum two-week notice upon leaving LTF.

☐ That the presentation and condition of the Group Fitness Studios and/or aqua area is part of my responsibility and compensation.

☐ That I am required to maintain a current National Group Fitness Certification.

☐ That I am required to attend Heart Rate Training and pass the exam in order to apply it in my classes.

☐ That a Heart Rate Monitor is part of my uniform and I must wear it at all times while teaching.

☐ That all new-hires are on a 90-day probation period wherein their teaching and status will be evaluated and that either party (instructor or Life Time Fitness) has the option of terminating employment after 90 days if the instructor and/or Department Head feel that the individual's teaching skills do not meet Life Time Fitness' standard of quality.

9/6/21 _____
DATED          SIGNATURE

_____
CLUB LOCATION

***Return this signed receipt to your Department Head prior to Employee Orientation.***
*Department Head: File in Employee Personnel File*

TEAM MEMBER HANDBOOK

RECEIPT AND AGREEMENT

I have received my copy of the Life Time Fitness, Inc. Team Member Handbook that outlines the policies, practices, and benefit guidelines of the Company, and I have read, understand and agree to act in accordance with the Team Member Handbook

Since the information in the Team Member Handbook is necessarily subject to change as situations warrant, it is understood that changes may revise or eliminate policies in the Team Member Handbook. These changes will be communicated to me by my supervisor or manager or through official notices. I accept responsibility for keeping informed of these changes.

I further acknowledge my understanding that all Team Members of Life Time Fitness, Inc. are Team Members at will unless subject to a specific signed employment agreement specifying employment for a particular term. Employment-at-will means employment may be terminated with or without cause. Either the Team Member or Life Time Fitness, Inc. may end the employment-at-will relationship at any time for any reason not prohibited by law.

**Note:** This form should be maintained in the Team Member's personnel file.

_Gregory Langadios_    9/8/21
Team Member Signature      Date

_Gregory Langadinos_
Team Member Name (please print)

OLIVIA MAURER

OMAURER@LT.LIFE

### Life Time Fitness Sexual Harassment Policy

Harassment and discrimination is defined as any behavior that creates or is intended to create a hostile, offensive or intimidating work environment. Life Time Fitness does not tolerate any form of harassment or discrimination.

We are committed to providing an environment that is free from disrespectful and offensive behavior and discrimination for all of our team members, members and guests. Each individual has a right to work in an atmosphere that promotes equal opportunities and prohibits discriminatory practices. We strictly prohibit sexual harassment and harassment and discrimination on the basis of race, color, religion, sex, national origin, age, ancestry, marital status, sexual orientation, public assistance, disability or any other characteristics protected under federal, state or local law. We also strictly prohibit harassment on the basis of an individual's protected activity (opposition to prohibited discrimination or participation in the statutory complaint process).

It is a violation of the Code for any team member, club member, or other individual to harass or discriminate against any team member, club member, or other individual affiliated with Life Time Fitness. Any individual determined to have violated the Code will be subject to appropriate disciplinary or other action, which, in the case of a team member, may include discipline up to and including termination of employment.

Prohibited harassment under the Code consists of unwelcome verbal or physical conduct or communication of a sexual nature or based upon a team member's race, color, religion, sex, national origin, age, ancestry, marital status, public assistance, disability or any other characteristics protected under federal, state or local law.

Sexual harassment is specifically prohibited. Sexual harassment consists of unwelcome sexual advances or other verbal or physical conduct or communication of a sexual nature when:

- Submission to such conduct or communication is either explicitly or implicitly made a term or condition of obtaining or retaining employment;
- Submission to or rejection of such conduct or communication by an individual is used as a factor in decisions affecting that individual's employment; or
- Such conduct or communication has the purpose or effect of substantially or unreasonably interfering with an individual's employment or creating an intimidating, hostile or offensive employment environment.

Examples of conduct that may be considered sexual harassment are set forth below. These examples are provided to illustrate the kind of conduct prohibited by the Code. Sexual harassment may include, but is not limited to:

- Sexual or suggestive comments or jokes;
- Sexual propositions;
- Sexist remarks;
- Patting, pinching, or unnecessary touching;
- Unwanted sexual advances;

While a complaint is pending, the person about whom the complaint has been made shall not participate in any formal or informal evaluations of the person who has made the complaint. Any attempt to do so constitutes a separate violation of the Code that may result in discipline, up to and including termination of employment.

If you believe that you or someone else has been subject to discrimination or harassment prohibited by the Code, you should immediately report it to a supervisor or manager, or to:

Human Resources
Life Time Fitness, Inc.
6442 City West Parkway
Eden Prairie, MN 55344
Phone: (952) 947-0000

Or:

Team Member Hotline: (888) 475-4211

# EXHIBIT "7"

☰  **EP** **ETHICSPOINT**
Incident Management

ISSUE TYPE: VIOLATION OF COMPANY POLICY, LAW, OR INDUSTRY STANDARD

Questions and Comments

Report Details

Print My Report

Log Off

## REPORT DETAILS

**Report Submission Date**
3/1/2022

**Reported Company/Branch Information**
Location Laguna Niguel
25500 Rancho Niguel Road
City/State/Zip: Laguna Niguel, CA, 92677, USA )

**How are you affiliated with Life Time?**
Consultant

**Please identify the person(s) engaged in this behavior:**
Barry Stevens - general manager
Gloria (last name unknown) - operations

**Is management aware of this problem?**
Yes

**What is the general nature of this matter?**
Member A, (names unknown), and Lucas, (last name unknown), member B are violating company policy and Gregory is being harassed.

**Please provide the specific or approximate time this incident occurred:**
On February 26,2022

**How long do you think this problem has been going on?**
1 to 3 months

**How did you become aware of this violation?**
It happened to me

**Details**
On February 1, 2022, member A, (names unknown), and Lucas, (last name unknown), member B came in the gym to bet on basketball games. The two members are bookies, and asked Gregory if he wanted to be a body guards from them. The action done by the two members are against the policy per the hand book. Gregory wrote an email to Barry to report the issue, however nothing was done to resolve the issue. The witness to this issue are Danny Murrillo, member, maintenance, (names unknown), and other coworkers, (names unknown). Gregory feels discriminated against since Gloria did nothing to resolve Gregory's issue when he was harassed by another gym member. Gregory was not given with the same results that was given to another female member whom was harassed.

On February 26, Gregory told Barry and Gloria not to speak to Gregory. Gregory is reporting this issue to have something done about his harassments and the members violating the policy.

**Follow-Up Notes**
There are no additional notes for this report.

**Follow-Up Questions/Comments**
3/1/2022 9:28 AM posted by Organization
Dear Gregory,

I have reached out to Barry and our Member Relations team to address the concerns you have raised. If you need additional assistance please follow up with Barry or reach out to Member Relations at Mmeberrelations@lt.life.

Thank you

Life Time Human Resources

**Chat Transcripts**
There are no chat transcripts for this incident.

SAS70
Type II Certified     PRIVACY FEEDBACK
Powered by TRUSTe

Privacy Statement | Terms of Use
© NAVEX Global 2022. All rights reserved.

≡ **ETHICSPOINT®**
Incident Management

Questions and Comments

Report Details

Print My Report

Log Off

ISSUE TYPE: VIOLATION OF COMPANY POLICY, LAW, OR INDUSTRY STANDARD

QUESTIONS AND COMMENTS

The organization sent these questions or comments before report was closed. You cannot respond.
3/1/2022 9:28 AM
Dear Gregory,

I have reached out to Barry and our Member Relations team to address the concerns you have raised. If you need additional assistance please follow up with Barry or reach out to Member Relations at Mmeberrelations@lt.life.

Thank you

Life Time Human Resources

SAS70
Type II Certified

PRIVACY FEEDBACK
Powered by TRUSTe

# EXHIBIT "8"



HEALTHY WAY OF LIFE

Legal

2902 Corporate Place
Chanhassen, MN 55317
952.947.0000
lifetimefitness.com

March 13, 2022

**VIA E-mail and U.S. Mail**

Greg Langadinos
1650 San Canyon Avenue Unit 327
Irvine, CA 92618

Re: Termination of Your Life Time Membership

Mr. Langadinos:

Your membership with Life Time is terminated as of March 1, 2022, due to your repeated violations of our Proper Conduct policy. While Life Time team members have discussed this matter in full with you, this letter will serve to memorialize in writing the basis for termination of your membership, and further as written notice that (1) will we not extend membership to you again in the future due to these violations and (2) that you may not enter Life Time premises as a guest or otherwise in the future.

Life Time terminated your membership pursuant to the terms of the attached Member Usage Agreement (MUA) which you executed on March 1, 2021. In your MUA with Life Time, you agreed as follows:

**CLUB POLICIES; MEMBERSHIP TERMINATION OR SUSPENSION BY LIFE TIME.** I understand that Life Time retains complete control over all matters affecting or relating to its members and memberships, including but not limited to membership levels and types, access, prices, dues, fees, premises, facilities, equipment, services, products, programs, activities, classes, sessions, seminars, workshops, assessments, events, amenities or benefits, all of which are subject to change at any time without notice. I will comply, and ensure that Minor Member(s), Other Member(s) and Guest(s) comply, with Life Time's policies, procedures, rules, and regulations ("Club Policies"), whether set forth on paper, verbally, in club signage, or online at www.lifetime.life or other Life Time website. Life Time may change, modify or otherwise alter any Club Policies at any time without notice. I understand that Life Time may in its sole discretion terminate or suspend my membership or any aspect thereof, including but not limited to applicable guest privileges, for any reason, including but not limited to any conduct by me, Minor Member(s), Other Member(s) or Guest(s) that violates any Club Policies or that Life Time determines to be improper, inappropriate, or contrary to its best interests.

Our Club Policies - https://www.lifetime.life/policy/guest-and-club-policy.html - provides as follows:

I CAN DO IT ALL IN MY LIFETIME



**HEALTHY WAY OF LIFE**

Life Time

2902 Corporate Place
Chanhassen, MN 55317
952 947 0000
lifetimefitness.com

***Proper Conduct.*** *We strive to uphold a safe, fun, family-oriented environment. As such, we expect proper, respectful conduct on the premises at all times. We do not permit disrespectful conduct toward members, guests, employees ("team members") or vendors, including but not limited to vulgar, profane, indecent, offensive, violent, hostile, aggressive, threatening, harassing, stalking, fraudulent, or other inappropriate conduct or language.*

Life Time terminated your membership based on your violation of our Proper Conduct policy in breach of your Member Usage Agreement.  As you and I discussed on the phone, you have engaged in disrespectful conduct toward other members and our team members, including conduct or language that is offensive, profane, vulgar, aggressive or otherwise inappropriate. Specifically, we terminated your membership on March 1, 2022, because you threatened another member with physical harm and used inappropriate language toward him, calling him a "faggot" among other profane, vulgar and offensive language in the presence of one or more other members.

This type of conduct is not isolated. Your disrespectful conduct has continued even after your membership was terminated in your communications (by phone or email or both) with me, our club General Manager, and our Senior Manager of Member Relations.  For instance, in those communications, you demean our team members with such language as "man hater," "sexual predator," "crooked shyster," "boy-lover," and "sack of shit."  Your disrespectful conduct toward our members and team members is clear grounds for termination of your membership.

Please cease and desist from sending e-mails or calling any Life Time team members or members, or anyone else affiliated with Life Time.

Regards,

Christopher Ryan
Senior Associate General Counsel
Life Time, Inc.
2900 Corporate Place
Chanhassen, MN 55317

E-mail: cryan3@lt.life

I CAN DO IT ALL IN MY LIFETIME